[Civ. No. 68585. Second Dist., Div. Seven. Mar. 29, 1984.]

JOYCE COOPER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOMITA TRENCHING AND EXCAVATING CORPORATION et al.,
Real Parties in Interest.

COUNSEL

David S. Sperber for Petitioner.

No appearance for Respondent.

Cozy & Keller, Robert V. Keller, Leslie M. Price, Jr., Buck, Molony, Nimmo & Ammirato, Mark D. Rutter, Eliaser & Kay and James R. Eliaser, for Real Parties in Interest.

OPINION

**THOMPSON, J.**—This petition for a writ of mandate involves the issue of when a cause of action can be stated for negligent infliction of emotional

distress arising out of injury to property. Because petitioner Joyce Cooper ("Cooper") has not made the requisite threshold showing, we will deny the petition.

Cooper brought an action against real parties in interest here, Lomita Trenching and Excavating Corporation (Lomita), Rolling Hills Nursery (Nursery), Albert and Claire Kaufman (Kaufmans) and Jack Irvine. Cooper's complaint alleged that the defendants negligently allowed Lomita's tractor to roll away from the place it was parked. The tractor resultingly ran into Cooper's Rolling Hills residence, causing damage to her home, grounds and swimming pool. In addition to recovery of damages to her property, Cooper sought damages for emotional distress arising out of the accident.

The accident occurred at 2:30 p.m., while no one was at home. A Los Angeles Sheriff's deputy informed Cooper upon her return home that a tractor had run into the back of her house. Although the tractor ran into the part of the house where her children's playroom was located, Cooper was aware that her children were away from the home with their father.

Much of Cooper's testimony upon deposition relates to her having to move into a hotel. Cooper felt insecure with the temporary board covering the hole created in the rear of the house; on the day after the accident, she therefore moved to a hotel, taking her two children and her maid. Cooper also outlined her frustrations in making arrangements with the insurance company. However, the insurance company was not named in the action.

Cooper noted in her declaration that she sought psychological therapy in the aftermath of the accident. She also claimed that during the four months it took before she returned to her home she suffered headaches and intestinal disorders. She maintains that the stress has continued to affect her emotionally and physically.

After the action had been ordered into arbitration (Code Civ. Proc., § 1141.11), Lomita moved for summary adjudication of the emotional distress claim, contending that Cooper could not state a cause of action for emotional distress arising from damage to her property.

The Nursery and Kaufmans joined in Lomita's motion for summary adjudication. The respondent court granted the motion. Cooper petitioned for a writ of mandate directing respondent superior court to vacate its summary adjudication. We issued an alternative writ of mandate as to the claim for emotional distress, and stayed the arbitration hearing pending our decision.

*Discussion*

■ In *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], the court in determining whether the plaintiff was entitled to protection from negligent infliction of emotional stress "identified foreseeability of the risk as the critical inquiry. . . ." (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 922 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) ■ " 'In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.' " (*Ibid.*)

In *Dillon,* a mother sought to recover damages for emotional distress arising from her witnessing the negligently inflicted death of her child. ■ The *Dillon* court offered a mode of analysis to determine the liability in the bystander type case: "In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (68 Cal.2d at pp. 740-741.) Courts following *Dillon* have, until recently, required a strict adherence to the *Dillon* factors. (See Comment, *Negligent Infliction of Emotional Distress: New Horizons After Molien* v. *Kaiser Foundation Hospitals* (1981) 13 Pacific L.J. 179, 188.)

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, the court reflected upon and refined the meaning of *Dillon.* The defendant physicians in *Molien* negligently misdiagnosed Mrs. Molien as having syphilis. Mrs. Molien was advised to inform her husband of the diagnosis. The misdiagnosis created suspicion and tension in the marriage, eventually resulting in dissolution of the marriage. Mr. Molien sought damages for negligent infliction of emotional distress. The court in establishing a duty to Mr. Molien distinguished between the percipient witness involved in *Dillon* and what the court characterized as a direct victim: "It must be remembered . . . that in *Dillon* the plaintiff sought recovery of damages she suffered as a percipient witness to the injury of a third person, and the three guidelines there noted served as a limitation on that particular cause of action. [Citation.] Here, by contrast, plaintiff was himself a direct victim of the assertedly negligent act. By insisting that the present facts fail to satisfy the first

and second of the *Dillon* criteria, defendants urge a rote application of the guidelines to a case factually dissimilar to the bystander scenario. In so doing, they overlook our explicit statement in *Dillon* that an obligation hinging on foreseeability 'must necessarily be adjudicated only on a case-by-case basis . . . .' [Citation.]" (*Id.,* at pp. 922-923.)

In the case at bench, Cooper urges that she is a direct victim—that she should be characterized as a direct victim through the injury to her property interest.

The vast majority of post-*Dillon* and post-*Molien* decisions involving negligent infliction of emotional distress arose out of a bystander's witnessing human injury. " '[W]hen a child is endangered, it is not beyond contemplation that its mother will be somewhere in the vicinity, and will suffer serious shock.' (Prosser, The Law of Torts . . . .)" (*Dillon, supra,* 68 Cal.2d 741.) In the *Molien* factual setting, it is also "easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse . . . ." (*Molien, supra,* 27 Cal.3d at p. 923.) Although the *Molien* injury is distinct from the percipient witness case, the *Molien* injury is still one which clearly affects emotions within human perils and human relationships. The misdiagnosis not only creates anxiety concomitant with contraction of serious disease but, in the case of syphilis, it portends marital infidelity.

■ The issue before us here is whether to extend the rationale of *Molien* to redress emotional distress resulting solely from negligent injury to property.

No California case has allowed recovery for emotional distress arising solely out of property damage, absent a threshold showing of some preexisting relationship or intentional tort. This case involves no preexisting relationship between the parties. Thus, we do not feel it appropriate to extend recovery for emotional distress here.

Cooper urges that *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470], supports recovery for emotional distress for injury to property. However, *Jarchow* explicitly involved a preexisting insurer-insured relationship between the parties, as well as bad faith on the part of the insurer. (See also *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173].) In *Jarchow,* the court allowed a claim for emotional distress where the title company "negligently fails to discover or disclose a recorded lien or encumbrance . . . *and, upon being notified of the existence of a recorded lien or encumbrance, unjustifiably*

*refuses to take any legal action to clear the title or eliminate the cloud . . . ." (Jarchow, supra,* 48 Cal.App.3d at p. 926; italics added.)

Again in *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844 [88 Cal.Rptr. 39], the court allowed recovery for emotional distress arising out of negligent loss of property. In *Windeler,* the plaintiff, Mrs. Windeler, left several rings with the defendant jeweler in order to have them reset. She emphasized to the jeweler that the rings were cherished momentos of her husband and had great sentimental value. When the jeweler lost the rings, Mrs. Windeler sought damages for suffering from headaches, loss of sleep, nervousness and other manifestations of emotional distress. The court noted: "Our main inquiry, therefore, is directed to whether under the circumstances of this case there can be a recovery for plaintiff's mental suffering and emotional distress. In making this determination we must first ascertain the nature of the relationship which existed between plaintiff and defendant." *(Id.,* at p. 850.) The court in allowing recovery found the bailor-bailee relationship combined with the "special circumstance[s] [of the sentimental value] known to both of the parties" *(id.,* at p. 852) supported a finding that emotional distress proximately resulted from the loss.

In the case at bench, there was no preexisting relationship between the parties. The existence of a preexisting relationship affects the determination of reasonable foreseeability. In *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, the court examined another emotional distress claim where an insurer breached its covenant to deal in good faith with its insured. The court noted that an insured purchases insurance "to protect . . . against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss, and recovery of damages for mental suffering has been permitted for breach of contracts which directly concern the comfort, happiness or personal esteem of one of the parties. [Citation.]" *(Id., at p. 434.)* It is because of the relationship between the parties that the court determined it was reasonably foreseeable to the insurer that rejecting a claim in bad faith may create emotional distress.

While the courts have expanded the scope of the tort of negligent infliction of emotional distress, reasonable limitations on the extent and remoteness of a defendant's liability must be maintained. Although emotional distress arising out of loss of property evokes a sentimental loss, recovery is limited to cases where, at a minimum, a duty of care exists by virtue of a preexisting relationship between the parties or where the damage arises out of an intentional tort.

The stay is dissolved, the alternative writ is discharged, and the petition for writ of mandate is denied.

Johnson, Acting P. J., and Merrick, J.*, concurred.

Petitioner's application for a hearing by the Supreme Court was denied May 23, 1984.

---

*Assigned by the Chairperson of the Judicial Council.