[No. B062550. Second Dist., Div. Two. Sept. 7, 1993.]

PENNY PLEASANT, Plaintiff and Respondent, v.
THOMAS M. CELLI et al., Defendants and Appellants.

## COUNSEL

McKay, Byrne & Graham, Michael Byrne, Douglas G. Benedon, Esner, Marylander & Zakheim, Esner, Marylander, Zakheim & Higa, Stuart B. Esner, Grant Marylander and Rosalyn S. Zakheim for Defendants and Appellants.

Michael J. Piuze and John Keiser for Plaintiff and Respondent.

## OPINION

**BOREN, P. J.**—An attorney was sued for allowing the statute of limitations to expire on his client's medical malpractice claim. A jury found the attorney liable for malpractice, and assessed damages for negligent infliction of emotional distress against him as well.

On appeal, the attorney contends that the suit against him is barred by the statute of limitations. We conclude that the action was timely filed. He also contends that the award for negligent infliction of emotional distress is barred as a matter of law. Under the circumstances presented here, we agree, and modify the judgment accordingly.

### FACTS

Respondent Penny Pleasant gave birth to a daughter, Deja, in April of 1980. On September 1, 1981, Pleasant took Deja to their family physician because the child was feverish, sleepless, had cold sweats, was not urinating, and lacked appetite. Several courses of antibiotics and cough syrup were

prescribed, but Deja's condition steadily worsened. Although the child had scarcely eaten in 10 days, and there was a rash around her mouth, Pleasant was told by a physician that she was being an overprotective mother. The rash began to spread down Deja's chin and throat, but still no blood tests or cultures were recommended by her doctor.

Finally, on September 19, 1981, Deja stopped breathing. She was dead on arrival at the hospital. Pleasant's experts opined that (1) the cause of Deja's death was esophagitis and gastritis contributed to by dehydration, and (2) the physician's conduct fell below the standard of care required of family physicians. The autopsy report concluded that the most likely cause of death was "acute esophagogastritis and regional lymphadenitis, with nonspecific myocardiopathy and sickle cell trait."

In October of 1981, Pleasant contacted appellant Thomas M. Celli regarding Deja's death. Pleasant told Celli she did not know what went wrong, but that she felt the child should not have died. Celli told her he understood how she felt because he, too, had an infant. He agreed to investigate the possibility of a suit for medical malpractice. An expert retained by Celli in 1981 informed him that he did not have a case against the hospital or the physician who treated Deja.

In 1983, Celli told Pleasant her case lacked merit. Pleasant became tearful and upset. She could not understand why it had taken so long to tell her she had no case. Celli could not explain the two-year delay. Although Pleasant was told her case was unmeritorious, Celli's firm had actually filed a medical malpractice suit on Pleasant's behalf on November 24, 1982. The suit alleged causes of action for wrongful death, negligent infliction of emotional distress, and personal injury. Celli admitted that he instructed his law partner to sign a certificate of merit attesting to the validity of the suit, although he lacked a medical opinion substantiating the certificate.

Pleasant retained new counsel to represent her in the medical malpractice action instituted by Celli. The medical defendants demurred to the complaint on the grounds that it was barred by the statute of limitations. When notified of this defense by Pleasant's new counsel, Celli took the position that the suit was not time-barred. Celli informed Pleasant's attorney that he lacked malpractice insurance. He requested that Pleasant contest the arguments asserted by the medical defendants and participated in the case by researching and drafting Pleasant's opposition to the statutory defense. The medical defendants ultimately prevailed against Celli's arguments on summary judgment. Celli then urged Pleasant to seek a new trial in the underlying case. Judgment in the underlying suit was entered in December of 1985.

Pleasant learned that the statute of limitations had lapsed on her medical malpractice claim in 1985. The news upset her because she thought the case would be resolved by then. She felt that she could not get on with her life and her daughter could not rest in peace until the case was resolved. She was devastated and angry because she believed that doctors and lawyers were there to help her, and that she had been misused by both. She instituted this suit for legal malpractice against Celli and his firm on June 17, 1986.

Trial was bifurcated. The court initially tried the issue of whether the legal malpractice action was barred by the statute of limitations. On October 30, 1989, the court ruled that this action was timely. The matter then proceeded to trial. It was stipulated that appellants failed to file a medical malpractice action on Pleasant's behalf prior to the expiration of the statute of limitations.[1] On August 8, 1991, the jury rendered a verdict in Pleasant's favor. It found that Pleasant's child received negligent medical care which resulted in the child's death. The jury awarded Pleasant $350,000 in damages for the loss of Deja, plus $5,000 for funeral expenses, plus $500,000 for the emotional distress suffered by Pleasant as a result of Celli's negligence.[2]

Appellants' motions for a new trial and for correction of the judgment were denied on October 1, 1991. Judgment was entered the same day. An appeal was taken on October 28, 1991.

DISCUSSION

## I. Statute of Limitations

Appellants contend that Pleasant's legal malpractice suit is barred by the statute of limitations because she failed to file suit within one year after their negligence came to light.

A cause of action for legal malpractice accrues when the client (a) discovers or should discover the facts essential to the malpractice claim, *and* (b) suffers appreciable and actual harm flowing from the attorney's negligent

---

[1]Appellants' legal theory was that the medical malpractice action was unmeritorious; therefore it was immaterial whether the complaint was timely.

[2]The $350,000 award for Deja's death was reduced by stipulation to the $250,000 maximum permitted under the Medical Injury Compensation Reform Act (MICRA) (Civ. Code, § 3333.2, subd. (b)).

conduct. (Code Civ. Proc., § 340.6[3]; *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691].) "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of a future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)

Until recently, it was unclear at what point actual injury to the client occurs. One line of cases held that no actual injury occurred until the attorney's error became "irremediable." Another line of cases held that the injury occurs when the underlying case is dismissed. ▮ In *Laird* v. *Blacker, supra,* the Supreme Court resolved the conflict by establishing a "bright line" rule: "[W]e *hold that under section 340.6, the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal."* (2 Cal.4th at p. 615, italics added.)

In *Laird,* the defendant lawyers served a complaint on the plaintiff's behalf, then failed to prosecute the case. The underlying suit was dismissed for lack of prosecution on October 20, 1981. Plaintiff discharged her lawyers and filed an appeal. She did not file a malpractice action against the lawyers until May 17, 1983. The court concluded that the plaintiff sustained actual injury when the trial court dismissed her underlying action and entered judgment against her, and she was compelled to incur legal costs in pursuing an appeal. The limitations period was not tolled while her appeal was being resolved. Her malpractice suit was thus barred by the statute of limitations. (2 Cal.4th at p. 615.)

---

[3]Code of Civil Procedure section 340.6 states: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action. [¶] (b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event in the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event."

In its analysis, the Supreme Court cited with approval several Court of Appeal decisions.[4] In each of the cited cases, the court concluded that the cause of action arose upon the dismissal of the underlying action, or when judgment was entered in the underlying action. In *Troche* v. *Daley, supra,* for example, a lawyer failed to serve a timely lawsuit, causing it to be dismissed. The attorney was subsequently discharged. The court concluded that "[w]hile [the attorney's] alleged negligence occurred in 1981—when he failed to serve the appropriate federal entities—Troche did not suffer injury from that negligence until her lawsuit was dismissed [in 1984]." (217 Cal.App.3d 403, 410.)

Ignoring the bright line rule formulated by the Supreme Court in *Laird,* appellants posit that the statute began to run well before the entry of an adverse judgment or order of dismissal in the underlying case. Specifically, they assert that Pleasant's cause of action accrued when the defendant is in the underlying suit raised the possibility of a missed statutory deadline by pretrial motion in October of 1984. Appellants theorize that Pleasant's "discovery" of the medical defendants' statute of limitations defense completed her cause of action, inasmuch as the actual damage—loss of the claim against the medical defendants—had already occurred.

In support of their argument, appellants rely on a case from the Sixth District, *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436 [13 Cal.Rptr.2d 406], which purports to limit the Supreme Court's holding in *Laird* v. *Blacker, supra,* 2 Cal.4th 606. The "*Finlayson* qualification" is that *Laird* does not apply to cases where, as here, the legal malpractice consists of missing a statute of limitations. (10 Cal.App.4th at p. 1444.)

The *Finlayson* decision does not offer a compelling reason for disregarding the bright line rule established in *Laird* v. *Blacker.* Relying on an Indiana Court of Appeal decision, the *Finlayson* court concludes that actual damage is sustained as soon as the statute of limitations expires in the underlying suit—even if no court has determined at what point that might have occurred. The decision seems to assume that it is obvious at what point the statutory deadline expires, even though this is often a hotly contested issue, given the various tolling and estoppel principles that can be asserted.

The *Finlayson* court does not explain why missed statute of limitations cases are different from any other attorney negligence cases: Why did the harm not occur at the time the attorneys failed to prosecute the plaintiff's

[4]*Troche* v. *Daley* (1990) 217 Cal.App.3d 403 [266 Cal.Rptr. 34], *Turley* v. *Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441], and *Worton* v. *Worton* (1991) 234 Cal.App.3d 1638 [286 Cal.Rptr. 410]. (*Laird* v. *Blacker, supra,* 2 Cal.4th at pp. 612-614.)

case in *Laird* v. *Blacker*? Why did the Supreme Court conclude that only a *judicial* determination of a failure to prosecute served to establish actual harm? Why did the harm not occur on the last day plaintiff could have served the defendants in the underlying suit in *Troche* v. *Daley*? Why did the Court of Appeal conclude that only a *judicial* determination of untimely service could start the statute of limitations? Is a plaintiff harmed by her attorney's failure to file a timely lawsuit, even if it never occurs to the defendants in the underlying suit to assert a statute of limitations defense? Under *Finlayson*, the answer would be "yes." Taken to its extreme, *Finlayson* would oblige a plaintiff to sue a former attorney upon discovering that the attorney filed the complaint late—even if the defendants do not realize the suit against them is untimely.

The peculiar results that might be spawned by the *Finlayson* reasoning were foreseen by the Oregon Supreme Court, albeit in a different type of case, in *United States National Bank of Oregon* v. *Davies* (1976) 274 Ore. 663 [548 P.2d 966]. The court there recognized that in many cases it is impossible to determine whether a client has been harmed by his attorney until the ultimate determination of the underlying suit, due to the closeness of the legal issues. (548 P.2d at p. 969.) The court commented upon the pitfalls of obliging a client to sue his attorney before the underlying suit is resolved: "Plaintiff's decedent could have played it safe by filing an action against defendants [his attorneys] immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view." (*Id.* at p. 970.)

An equally incongruous result would occur in the present case if the *Finlayson* principle were applied. Celli would have Pleasant simultaneously resist the statutory defense asserted by the medical defendants by arguing that her case was timely filed, while at the same time, inconsistently, she would have a lawsuit pending against him averring that her suit against the medical defendants was *not* timely filed. Needless to say, the admissions contained in the legal malpractice suit would have a detrimental effect on the

contrary argument being maintained in the underlying medical malpractice suit.

The *Finlayson* court arrived at its conclusion that the harm occurs when the statute of limitations expires by relying on the distinction between "the fact of damage" versus "the amount of damage." (10 Cal.App.4th at p. 1442.) *Finlayson* uses this distinction to conclude that the harm occurs earlier in missed statute of limitations cases than it does in any other type of attorney malpractice.

We think the *Finlayson* court, though alluding to "fact" versus "amount" of damage, was actually focusing on a very different dichotomy. Namely, the opinion is concerned with the moment the attorney commits his wrong instead of the moment when substantial harm occurs. (See *Developments in the Law—Statutes of Limitations* (1950) 63 Harv.L.Rev. 1177, 1200-1201: "The statutory period may begin either when the defendant commits his wrong or when substantial harm matures.") While the wrong and the harm may in some instances be concurrent (e.g., where the defendant physically assaults the plaintiff), the two are frequently not concurrent.

This is a case in which the wrong and the harm were not concurrent. Celli committed his wrong the day the statute of limitations expired. However, the actual harm to Pleasant continued to be merely prospective until (1) the medical defendants recognized a potential statute of limitations defense, (2) asserted the defense, (3) fought Pleasant's tolling and other arguments through demurrer and summary judgment, and (4) succeeded in having Pleasant's case dismissed. Until that point, when the "fact" of damage was judicially determined, Celli's breach of professional duty caused only an unrealized threat of future harm. (*Budd* v. *Nixen, supra,* 6 Cal.3d 195, 200.)

In short, in statute of limitations cases, actual and appreciable harm may *never* occur, and the plaintiff's rights may never be invaded despite the attorney's "wrong," if no one ever spots the issue as a potential defense. It is unproductive to require a plaintiff to file a precautionary legal malpractice suit in anticipation of losing on an issue that may never arise, or, if it does arise, may be resolved against the defendants in the underlying suit.

For these reasons, we choose to adhere strictly to the rule established by the Supreme Court in *Laird* v. *Blacker,* and hold that in attorney malpractice cases, where the attorney's wrong consists of missing the statute of limitations in the underlying suit, the plaintiff's cause of action for malpractice does not accrue until the trial court dismisses the plaintiff's underlying case or enters an adverse judgment against the plaintiff. Because Pleasant instituted her suit less than one year after the trial court entered judgment against

her in the underlying action, this action is not barred by the statute of limitations.

## II. *Emotional Distress Damages*

The jury was instructed that Pleasant was entitled to recover damages for serious emotional distress caused by Celli's negligent conduct. It then awarded Pleasant half a million dollars in emotional distress damages.

One authority in the area of emotional distress damages in actions for attorney malpractice is a case from this division, *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815]. Interpreting Civil Code section 3333,[5] this court wrote, ". . . California courts have limited emotional suffering damages to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant. Damages for emotional suffering are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith." (67 Cal.App.3d at p. 761.)

Pleasant argues that *Quezada* v. *Hart* was wrongly decided, or that it has no precedential value due to subsequent developments in the law. Our review of recent authorities on the topic shows that the rule enunciated in *Quezada*—requiring physical impact or injury and intentional wrongdoing or bad faith—has indeed been superseded by later Supreme Court holdings.

■ Damages for serious mental suffering may now be recovered in the absence of either physical injury or impact. (*Smith* v. *Superior Court* (1992) 10 Cal.App.4th 1033, 1037-1038 [13 Cal.Rptr.2d 133].) This was the holding in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], wherein a husband and wife experienced anxiety, suspicion and hostility after the defendant misdiagnosed the wife as having a sexually transmitted disease. The Supreme Court departed from the traditional rule that physical impact or injury is a prerequisite to recovery of emotional distress damages. (*Id.* at pp. 928-930; accord, *Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1074, 1078-1079 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) Thus, the first prong of *Quezada*, requiring physical impact or injury, has clearly been repudiated.

In addition, the second prong of *Quezada*, requiring intentional wrongdoing or bad faith, has not been considered a prerequisite to recovery by the Supreme Court in negligent infliction of emotional distress claims. In *Molien*, for example, there was no allegation that the hospital or attending

---

[5]Section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

physician intentionally or deliberately misdiagnosed Mrs. Molien, or set out to consternate the couple and cause the breakup of their marriage. Rather, it appears to have been a case of inattentiveness or carelessness. Indeed, as the dissent acknowledges, "Our court today allows—for the first time—a money award against one who unintentionally disturbs the mental tranquility of another." (*Molien*, *supra*, 27 Cal.3d at p. 933, (dis. opn. of Clark, J.).) Likewise, there was no evidence of intentional misconduct or bad faith during the negligently handled childbirth in *Burgess* v. *Superior Court*, *supra*, 2 Cal.4th 1064. In fact, the Supreme Court emphasized that, even in the context of emotional distress claims, there are few exceptions to the general rule imposing liability not only for willful acts, but for negligent acts as well. (*Id.* at pp. 1079-1080.)

In short, the broad rule of *Quezada* v. *Hart*, flatly requiring physical impact or injury, as well as intentional malfeasance or bad faith in negligent infliction of emotional distress cases, misstates the law. We disapprove *Quezada* to the extent it does not conform to later developments in the law, as shown in the Supreme Court opinions we have discussed above. As noted in *Holliday* v. *Jones* (1989) 215 Cal.App.3d 102, 113 [264 Cal.Rptr. 448], "*Quezada* did not purport to establish a special rule for legal malpractice cases." Rather, it purported to enunciate a rule generally applicable to all emotional distress cases. That rule is no longer correct.

To determine liability for negligent infliction of emotional distress in any given case, including legal malpractice cases, several factors should be considered to ascertain whether the defendant has breached a duty of care. Whether a defendant owes a duty of care is a question of law. (*Burgess* v. *Superior Court*, *supra*, 2 Cal.4th 1064, 1072; *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278].) The pertinent factors to consider include " ' ". . . the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' " (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885-886 [2 Cal.Rptr.2d 79, 820 P.2d 181], quoting *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Burgess* v. *Superior Court, supra,* 2 Cal.4th at pp. 1079-1080.)

■ Foreseeability is the touchstone of emotional distress analysis. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 166 [216 Cal.Rptr. 661, 703

P.2d 1].) " 'Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis.' " (*Ibid.*, quoting *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Imposition of liability may be warranted "when there is a high degree of foreseeability of shock to the plaintiff and the shock flows from an abnormal event . . . ." (*Ochoa* v. *Superior Court, supra*, 39 Cal.3d at p. 168.)

Unlike medical malpractice, in which the defendant's wrongdoing usually has a direct, foreseeable and devastating effect on the plaintiff's physical and mental well-being, legal malpractice presents a more difficult case for emotional distress damages. Generally, the only foreseeable impact on the plaintiff from an attorney's wrongdoing is an economic loss. It is foreseeable that the plaintiff would be annoyed and inconvenienced by the attorney's failure, for example, to file suit within the applicable statute of limitations. However, the disappointment one might feel upon learning that counsel has missed a filing deadline falls far short of the shock, fright, mortification, humiliation, grief, anxiety or nervousness which characterize the cases imposing liability for negligent infliction of emotional distress. (See *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 648-649 [257 Cal.Rptr. 865, 771 P.2d 814].)

In this case, the only evidence supporting Pleasant's claim of emotional distress was that she felt frustrated and upset because Celli's error meant that resolution of her case would be delayed. Pleasant was also angry because she felt she had been misused by both doctors and lawyers in the course of these events. Finally, Pleasant points to Celli's kind words of understanding that he knew how she felt about the loss of a child as proof of the emotional aspect of Celli's representation.

Litigation is frequently stressful and disagreeable, even when one is a plaintiff.[6] It is not reasonably foreseeable that prolonged litigation would cause any especial trauma above and beyond the stresses inherent in litigation generally. Cases sometimes go on for decades while appeals are pending. Pleasant's annoyance that her recovery was delayed, and her personal feelings of betrayal by doctors and lawyers simply do not amount to a claim of highly foreseeable shock stemming from an abnormal event. (*Ochoa* v. *Superior Court, supra*, 39 Cal.3d at p. 168.) Distaste for litigation is a normal

---

[6]The distinguished Judge Learned Hand reputedly said that " 'as a litigant, I should dread a lawsuit beyond almost anything else short of sickness and of death.' " (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 11 [4 Cal.Rptr.2d 87].)

event. Moreover, Celli's expressions of empathy do not evince any understanding on his part that Pleasant would be particularly susceptible to severe emotional distress if a filing deadline expired.

As to the remaining factors, we quote the Third District's opinion in *Merenda* v. *Superior Court, supra*, 3 Cal.App.4th 1, 11, a legal malpractice case, because its analysis applies with equal force here: "The moral blame attached to defendants' conduct is only that which attends ordinary negligence. There is no suggestion of bad faith or reckless indifference to the plaintiff's interest in emotional tranquility. The policy of preventing future harm is served by the sanction of compensation for the economic loss occasioned by the malpractice. The burden to the defendant of avoiding malpractice is of no moment since that burden has already been imposed. The principal consequences to the community of imposing an incremental liability for these damages are the additional costs of doing business as a lawyer and the benefits of socialization of the risk of emotional injury."

In sum, a consideration of the factors listed in *Christensen* and *Burgess* leads us to the conclusion that emotional distress damages may not be recovered in this case as a matter of law.

We do not mean to suggest that emotional distress damages can never be recovered in legal malpractice actions. It is possible to envision cases in which the attorney's conduct—while not necessarily intentional or in bad faith—is so reckless and the resulting damage is so foreseeable that imposition of liability is proper.

Such a case was presented in *Holliday* v. *Jones, supra*, 215 Cal.App.3d 102. There, counsel's incompetent representation of the plaintiff resulted in the plaintiff being wrongfully convicted of killing his wife. Consequently, the plaintiff suffered great humiliation and distress when handcuffed and led away in front of his family following his conviction. He suffered further trauma while incarcerated. The plaintiff's criminal conviction was reversed on appeal, on the grounds of incompetency of counsel. He was acquitted upon retrial. It was plainly foreseeable that the lawyer's negligence would cause immediate and direct severe emotional distress to his client, and the court affirmed an award of $400,000 in emotional distress damages against the lawyer.

Unlike *Holliday* v. *Jones*, the case at bar is not a proper case in which to award damages for negligent infliction of emotional distress.

## DISPOSITION

The award of $500,000 in damages for negligent infliction of emotional distress is stricken from the judgment. The judgment is affirmed in all other respects. The parties will bear their own costs on appeal.

Fukuto, J., and Nott, J., concurred.

A petition for a rehearing was denied September 27, 1993, and appellants' petition for review by the Supreme Court was denied December 16, 1993.