Filed 4/21/22  Cairns v. Legal Aid Society of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| NIGEL CAIRNS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LEGAL AID SOCIETY OF SAN DIEGO, INC.,<br><br>    Defendant and Respondent. | D078441<br><br><br>(Super. Ct. No. 37-2019-00069067-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Nigel Cairns, in pro. per., for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing and Robert M. Shaughnessy for Defendant and Respondent.


## INTRODUCTION

Nigel Cairns sued the Legal Aid Society of San Diego (Legal Aid) for intentional infliction of emotional distress, after he was twice denied Legal

Aid services in connection with a landlord-tenant matter.[1]  He appeals from the trial court's ruling sustaining Legal Aid's demurrer to his third amended complaint (TAC) without leave to amend.  The trial court found the allegations of the TAC were " 'uncertain, ambiguous, and unintelligible' " (Code Civ. Proc.,[2] § 430.10, subd. (f)); the mere denial of legal services does not constitute " 'outrageous conduct' " sufficient to state a viable cause of action for intentional infliction of emotional distress (§ 430.10, subd. (e)); and there was no reasonable possibility that Cairns can cure these deficiencies by amendment.  We affirm.

BACKGROUND

I.

*Cairns's Allegations Against Legal Aid*[3]

Cairns alleged he is a retired physician who lost a large part of his retirement savings in the 2008 recession.  In May 2017, he moved into the Manor, "a 140-unit apartment complex" in San Diego owned by Lions Community and subsidized by "HUD" (i.e., the United States Department of

---

1    In the same lawsuit, Cairns also asserted a cause of action for intentional infliction of emotional distress against Lions Community Service Corporation (Lions Community), the owner of the building where he was living when he received notices of eviction.  The trial court denied Lions Community's anti-SLAPP motion to strike (Code Civ. Proc., § 425.16).  Lions Community's appeal of this ruling is proceeding separately under case number D078310.

2    Unspecified statutory references are to the Code of Civil Procedure.

3    Because this appeal arises from the trial court's ruling sustaining Legal Aid's demurrer, we recite the relevant factual allegations as it pertains to Cairns's claim against Legal Aid and exclude extraneous details that relate to his claim against Lions Community arising from his tenancy at the Lions Community Manor (the Manor).

2

Housing and Urban Development). Cairns received a monthly rent subsidy of "nearly $1K."

In July 2017, Cairns received what he alleged was an "eviction notice." He attached a partial copy of this notice to his second amended complaint. The notice bore the title, "Notice to Permanently Perform Covenant or Quit," and informed Cairns that to comply, he was required, within 10 days, to cease and desist any behavior that interfered with others' quiet enjoyment of the premises, cease and desist aggressive and/or harassing behavior with staff, and abide by the terms of his lease. (Capitalization omitted.)

Cairns alleged he consulted with a lawyer and "got the eviction changed to a warning." However, in September 2017, his rent was refused "without explanation." But he was able to "solve[ ]" the problem of the rent refusal when he sent a "complaint to [Lions Community] management sent via the BBB [Better Business Bureau]." In January 2018, he received a 90-day notice of eviction. In April 2018, the manager for the Manor refused his rent and precluded him from completing "[r]e-certification papers" which "are required every year."

In connection with his problems at the Manor, Cairns applied twice for free legal assistance from Legal Aid. The first time was in September 2017, after his rent was refused. He alleged he "was unable to find out" why he was refused but "presumed that fewer assets was better." He applied again in April 2018, with "only $7K remaining," but was again refused. Believing he was facing "certain eviction, [he] gave up[,] gave away EVERYTHING, and set off on foot for Mexico."

When he returned to San Diego in September 2018, he "read about the Shriver Project"[4] and learned it had an "income criterion of $28K" which was "far above" his income. However, he did not know "the separate asset criterion." "So in [the] Fall of 2018 [he] applied again, and decided to play a trick on [Legal Aid]." He provided Legal Aid with the financial information he had provided when he unsuccessfully applied in April 2018. This time, he "was accepted without reservations or conditions!" He received a call from Legal Aid the next day, and told the Legal Aid representative "that it was a trick." That evening, he received a call from a Legal Aid lawyer. He asked why Legal Aid "did not use emails as that would have prevented the apparent serious mistake in [his] application" and received the response, " 'Too busy.' "

Cairns then visited the Legal Aid office and spoke to its director. When the director "read the entry" from when Cairns applied in April 2018, Cairns learned Legal Aid had purportedly made a mathematical mistake in considering his reported assets. Cairns had reported assets of "between $5K and $8K" but the intake worker, he alleges, "wrote $5K and $8K equals $13K." He was "rejected" because "the limit was $10K." He alleged he was then "ejected" from the office after arguing with the director.

Cairns alleged "[t]he inappropriate refusal of legal aid ensured [his] eviction, homeless[ness] and distress." He sued Legal Aid, asserting intentional infliction of emotional distress as the sole cause of action.

To further support his claim against Legal Aid, Cairns alleged he believes "there are factors which indicate possible co-ordination [sic] of

---

4    Legal Aid explains that Cairns's reference to the "Shriver project" appears to be a reference to "the Civil Counsel Program initiated under the Sargent Shriver Civil Counsel Act," which "funds pilot projects to provide representation to low-income Californians on legal issues affecting basic human needs."

behavior between" Legal Aid and Lions Community. He alleged "[i]t would be to [Lions Community's] advantage if [he] were refused Legal Aid" because "[his] eviction would be simpler" and it "would also ensure [his] distress." He further alleged that a lawyer who worked with the law firm that represented Lions Community used to work at Legal Aid, and a partner in the same law firm, "wrote in 2016 about the increased delays and work now involved in evictions because more clients had representation."

## II.

### *Legal Aid's Demurrer to the TAC*

Legal Aid demurred to the TAC. On October 9, 2020, the trial court sustained the demurrer on two independent grounds.

First, the trial court found the allegations against Legal Aid " 'uncertain, ambiguous, and unintelligible' " and sustained the demurrer pursuant to section 430.10, subdivision (f).

Second, the trial court ruled that Legal Aid's "fail[ure] to provide services to Cairns does not constitute the requisite 'outrageous conduct' sufficient to state a viable cause of action for intentional infliction of emotional distress." Thus, it sustained the demurrer on the ground that the TAC failed to state facts sufficient to constitute a cause of action for intentional infliction of emotional distress, pursuant to section 430.10, subdivision (e).

The trial court sustained the demurrer without leave to amend, finding there is not a "reasonable possibility that Cairns can state a good cause of action against Legal Aid." On January 22, 2021, the trial court entered a judgment of dismissal in favor of Legal Aid.[5]

---

[5] Cairns filed his notice of appeal on December 3, 2020, before the judgment of dismissal was entered. We exercise our discretion under rule

DISCUSSION

I.

*Principles of Law*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) " 'We treat the demurrer as admitting all material facts properly pleaded[.]' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We "accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged." (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125; accord *Blank*, at p. 318.)

"In considering a trial court's order sustaining a demurrer without leave to amend, ' "we review the trial court's result for error, and not its legal reasoning." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93.) We " 'affirm the judgment if it is correct on any theory.' " (*Ibid.*) "And when [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank, supra,* 39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

---

8.308(c) of the California Rules of Court and treat the premature notice of appeal as though it was "filed immediately after the rendition of judgment."

6

Further, on appeal, we presume the trial court's judgment to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  It is therefore the burden of the party challenging the judgment to affirmatively demonstrate error.  (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.)  " 'In so doing, he must raise claims of reversible error or other defect [citation], and "present argument and authority on each point made." ' " (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8; Cal. Rules of Court, rule 8.204(a)(1)(B).)  "We are not required to examine undeveloped claims or to supply arguments for the litigants."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 104.)  "Nor is an appellate court required to consider alleged error where the appellant merely complains of it without pertinent argument."  (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119 (*Berger*).)

An appeal may be deemed forfeited or abandoned where it fails to comply with the essential requirements of an appeal, including the requirement of providing a "reason to reverse or even modify the orders in question."  (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 8; see *Berger*, *supra*, 163 Cal.App.3d at p. 1120 [deeming appeal abandoned where appellant's brief "simply failed to make any arguments to support any theory of error"].)

These rules apply equally to self-represented litigants like Cairns. "The same burdens are imposed uniformly and equally on all appellants, and self-represented parties are ' "held to the same restrictive procedural rules as an attorney." ' "  (*Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 344–345 (*Burkes*); see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985 (*Rappleyea*) ["the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation"].)

7

## II.

### *The Trial Court Did Not Err in Sustaining*
### *the Demurrer Without Leave to Amend*

On appeal, Cairns does not challenge the grounds upon which the trial court sustained Legal Aid's demurrer or identify any error in the trial court's ruling. Rather, Cairns's appellate arguments consist of identifying what he believes are "misleading" statements by Legal Aid in its briefing on the demurrer *in the trial court*. Because we conclude the trial court correctly sustained the demurrer without leave to amend and Cairns has failed to demonstrate any reversible error, we affirm.

A.    *Mere Denial of Legal Services Does Not Constitute Outrageous Conduct Required to State a Claim of Intentional Infliction of Emotional Distress*

"A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 (*Hughes*).)

"A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Hughes, supra,* 46 Cal.4th at pp. 1050–1051.) It is not enough for the defendant to intentionally cause emotional harm. (Rest.3d, Torts: Liability for Physical and Emotional Harm § 46, com. d.) To satisfy this element of a claim of intentional infliction of emotional distress "requires both that the character of the conduct be outrageous and that the conduct be sufficiently unusual to be extreme." (*Ibid.*) "A great deal of conduct may cause emotional harm, but the requisite conduct for this claim—extreme and outrageous—

8

describes a very small slice of human behavior." (*Id.*, com. a.) " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.)

Several cases are illustrative of the degree to which a defendant's conduct must exceed accepted norms to serve as the predicate for a claim of intentional infliction of emotional distress. In *Hughes*, for example, the trustee of the decedent's estate made sexual advances on the decedent's former wife, the mother of the estate's sole beneficiary, and told her publicly and crudely that he would "get [her] on [her] knees eventually" and have sexual intercourse with her. (*Hughes*, *supra*, 46 Cal.4th at pp. 1039–1040.) Our high court held that while the trustee's comments were "inappropriate," they "[fell] far short of conduct that is so 'outrageous' that it ' " 'exceed[s] all bounds of that usually tolerated in a civilized community.' " ' " (*Id.* at p. 1051.)

In *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594 (*Mintz*), an insurer was alleged to have denied benefits for an investigational treatment to the insured, a terminally ill patient, and then failed to advise him of his statutory right to independent review of the denial. (*Id.* at p. 1609.) The court held that while the alleged conduct "may arouse our sympathy," it was not "extreme, outrageous, beyond the bounds of decency, atrocious, or intolerable in a civilized society." (*Ibid.*)

And in *McMahon v. Craig* (2009) 176 Cal.App.4th 1502 (*McMahon*), an owner whose dog died while under the care of veterinarians alleged that the veterinarians had taken steps to cover up their malpractice. (*Id.* at pp. 1515–1517.) The court held that the veterinarians' efforts to hide their malpractice

9

did not "rise to the extremity" required of a claim for intentional infliction of emotional distress. (*Id.* at p. 1517.)

A comparison of the conduct held insufficiently outrageous in the foregoing cases with the conduct alleged in this case confirms that the trial court was correct in concluding the allegations of the TAC failed to state a cause of action for intentional infliction of emotional distress. Cairns alleged he was denied legal services because Legal Aid's intake worker made a mistake when calculating his assets, and that he lost the opportunity to correct the mistake because Legal Aid personnel were " '[t]oo busy' " to communicate with him about the reason for the denial. At most, Legal Aid's denial of services would arguably be the result of the intake worker's math error, which is not conduct that is "extreme, outrageous, beyond the bounds of decency, atrocious, or intolerable in a civilized society." (*Mintz, supra*, 172 Cal.App.4th at p. 1609.) Similarly, the failure to send Cairns an email explaining why he had been denied falls far short of "ris[ing] to the extremity" necessary to support this claim. (*McMahon, supra*, 176 Cal.App.4th at p. 1517.)

Cairns does not challenge this aspect of the trial court's decision. Instead, he makes contentions that are somewhat difficult to understand.[6] He asserts "that [he] suffered [intentional infliction of emotional distress] because [he] received numerous eviction notices and was refused legal aid." He provides the following overview of his contentions on appeal: "In my last

---

[6] We appreciate that self-represented litigants like Cairns face a difficult burden in attempting to present an appropriate appellate argument. However, as we have mentioned, we are required to apply the same rules to self-represented parties that we apply to parties represented by counsel. (*Burkes, supra*, 26 Cal.App.5th at pp. 344–345; *Rappleyea, supra*, 8 Cal.4th at pp. 984–985.)

10

submission to the court [i.e., his opposition to Legal Aid's demurrer to the TAC], I marshaled my arguments. In [Legal Aid's] reply [to his opposition brief, Legal Aid] makes the statements which I allege are misleading."

In other words, Cairns's appellate arguments consist of contentions that Legal Aid, in the reply brief it filed in the trial court, in support of its demurrer to the TAC, mischaracterized or distorted his own positions as set forth in his brief opposing the demurrer. He does not attempt to connect Legal Aid's alleged distortions to the trial court's ruling. But this court is tasked with identifying errors in trial court rulings, not mistakes in briefs filed in the trial court. Cairns's arguments therefore do not present a cognizable theory of reversible error. (See *Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 8 [appeal may be deemed abandoned where appellant fails to "raise claims of reversible error or other defect" in the orders appealed from]; *Berger*, *supra*, 163 Cal.App.3d at p. 1120 [deeming appeal abandoned where appellant's brief "simply failed to make any arguments to support any theory of error"].)

B.  *Trial Court Did Not Err in Sustaining the Demurrer For Uncertainty in the TAC*

Section 430.10, subdivision (f), provides that a party may demur to a pleading on the ground that "[t]he pleading is uncertain," and that " 'uncertain,' " as used in this subdivision, "includes ambiguous and unintelligible." " 'A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures.' " (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 822.) " ' "[D]emurrers for uncertainty are disfavored, and are granted only if the pleading is so incomprehensible that a defendant cannot reasonably respond." ' " (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 695 (*A.J. Fistes*).) This is that rare case

where the operative pleading is too incomprehensible for Legal Aid to reasonably respond.

In determining whether a complaint is uncertain, we consider whether its substantive factual allegations are "sufficient to apprise" the defendant of the basis of the claims against it. (See *A.J. Fistes*, *supra*, 38 Cal.App.5th at p. 695.) Here, as Legal Aid persuasively argues on appeal, the TAC's factual allegations fail to allege facts sufficient to apprise Legal Aid of the basis of Cairns's sole claim of intentional infliction of emotional distress. As discussed above, one of the elements of such a claim is that "the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes*, *supra*, 46 Cal.4th at p. 1051.) Cairns's TAC, although replete with facts, fails to specify on what basis he claims Legal Aid's denial of services was intentional. Instead, it appears Cairns intends the reader to infer from those facts he does allege that Legal Aid was somehow acting in concert with, or under the direction of, others who were collaborating to silence him. However, this aspect of Cairns's claim is left to surmisal. The TAC is thus uncertain, and the trial court did not err in sustaining Legal Aid's demurrer on this ground.

Rather than challenge the trial court's ruling granting Legal Aid's demurrer for uncertainty, Cairns criticizes a statement that Legal Aid made in the section of its reply brief filed in the trial court in which it argued that the TAC was subject to demurrer for uncertainty. The statement was: "*The facts that [Cairns] believes [he] can substantiate, however, are of the phone calls that he made to Legal Aid* to challenge its application criteria — or, as he puts it, he 'presumed the office [he] called when [he] played a "trick" on [Legal Aid] would have records,' and his 'phone call log shows the expected occurrence and sequence of calls.' " (Italics added.) Cairns asserts that the

italicized words were not true, that he did make the referenced phone calls, and that "Legal Aid has the records- I am just describing what they are."

Cairns misperceives the issues presented by a demurrer for uncertainty. A demurrer for uncertainty lies where "the essential facts upon which a determination of the controversy depends" are not "stated with clearness and precision so that nothing is left to surmise." (*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537.) Cairns appears to be under the mistaken belief that Legal Aid's demurrer for uncertainty amounted to a contention that there was an absence of evidence to support the allegations of the TAC.

His appellate argument thus fails, for two reasons. First, we discern no distortion by Legal Aid of Cairns's description of the evidence that existed to support his claim. Second, any such distortion, even if it occurred, was immaterial since the existence of evidence of Cairns's phone calls to Legal Aid (or any other fact alleged in the TAC) was irrelevant to whether the allegations of the TAC were sufficiently clear and comprehensible to avoid a demurrer for uncertainty.

C.  *Cairns Has Not Demonstrated Any Reasonable Possibility He Can Amend to State a Cause of Action for Intentional Infliction of Emotional Distress Against Legal Aid*

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 801.)

13

Cairns did not seek leave to amend the TAC in the trial court. On appeal, he does not contend the trial court abused its discretion by denying him leave to amend. He does not assert that there is a possibility of amending to cure the foregoing defects, and he does not attempt to show how any such amendment would cure the defects in his TAC that caused the trial court to sustain Legal Aid's demurrer. We conclude the trial court did not abuse its discretion by denying him the opportunity to file yet another amended complaint.

D.    *Conclusion*

In sum, Cairns's arguments on appeal are limited to criticizing the reply brief his opponent filed in the trial court. These are not the sorts of arguments that have the potential to demonstrate reversible error. We have reviewed the positions advanced by Cairns and do not find in them any basis for concluding that the trial court erred when it sustained Legal Aid's demurrer to the TAC. Nor does Cairns present any argument supporting the conclusion that the trial court abused its discretion when it denied him the opportunity to file a fourth amended complaint. Because Cairns fails to present this court with a reason for reversing the trial court's decision, we affirm the judgment.

14

## DISPOSITION

The judgment of dismissal is affirmed.  Each side shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

DO, J.

WE CONCUR:


AARON, Acting P. J.


IRION, J.

15