[No. B086555. Second Dist., Div. Seven. Aug. 24, 1995.]

GEORGE T. MARSHALL, Plaintiff and Appellant, v.
GIBSON, DUNN & CRUTCHER et al., Defendants and Respondents.

1398

## Counsel

Love & Bosserman, Beth A. Shenfeld and Anne McWilliams for Plaintiff and Appellant.

McDermott, Will & Emery, Stephen A. Kroft, Lee L. Blackman and Steven L. Sevrin for Defendants and Respondents.

## Opinion

**LILLIE, P. J.**—In this action for legal malpractice, plaintiff Marshall appeals from judgment of dismissal entered after the court sustained without leave to amend the demurrer to complaint of defendants Gibson, Dunn & Crutcher, Ronald E. Gother, Anne K. Hilker, and David H. Kennedy on the ground that the action was barred by the statute of limitations.

### Allegations of the Complaint and Procedural Background[1]

On December 3, 1993, plaintiff filed complaint for damages for legal malpractice and breach of fiduciary duty arising out of defendants' provision

---

[1]In connection with the demurrer, the trial court was requested to, and apparently did, take judicial notice of a September 14, 1993, order confirming arbitration award, and the arbitrators' decision and award, which resolved a prior lawsuit filed in 1990 by plaintiff against J.W. Marshall and F.C. Swift, inter alia, for breach of a written contract, the "Agreement in Principle," which the parties executed in August 1986. We deem the "Agreement in Principle" discussed in the arbitration decision and award to be the same document labeled "Agreement" in the instant complaint, and refer to it as "Agreement." The instant action for legal malpractice involves primarily the 1986 Agreement, as well as other matters as alleged in the complaint and set out below. In another lawsuit against Marshall and Swift, inter alia, filed in April 1989, plaintiff sought dissolution of the limited partnership. Although the complaint alleges that the dissolution action was held in abeyance pending resolution of the breach of contract action, there are no further allegations with respect to the status of the dissolution action.

of legal services to plaintiff in connection with negotiations and drafting of a written agreement memorializing the terms of plaintiff's incentive and compensation plan offered to him by a publishing company, Marshall and Swift, a limited partnership.

The publishing company had been established by plaintiff's grandfather in 1932; in 1972, the general partners were plaintiff's father, J.W. Marshall, and F.C. Swift; in 1975 plaintiff began employment at Marshall and Swift and learned all aspects of the business in order to take over its operations; plaintiff was subsequently promoted to manager of the marketing, sales and education department. In 1981, plaintiff's grandfather passed away, and plaintiff became the chief executive officer of Marshall and Swift, also acquiring a 4.5 percent equity ownership of the partnership. In 1981, the senior general partners of Marshall and Swift represented to plaintiff that he would participate in the future growth and profits of Marshall and Swift generated by his efforts by future increases in his ownership interest in the partnership. Plaintiff, J.W. Marshall, and F.C. Swift engaged in discussions concerning the "passing of the partnership mantle to plaintiff through an Incentive and Compensation Plan," designed to transfer equity and control of the partnership from J.W. Marshall and F.C. Swift to plaintiff.

In 1983, plaintiff retained defendants to "represent plaintiff in the negotiations and drafting of a written agreement memorializing the terms of the Incentive and Compensation Plan offered by J.W. Marshall and F.C. Swift to plaintiff," and defendants agreed to perform legal services and protect "plaintiff's entitlement to the full benefits of the Incentive and Compensation Plan." For close to 30 years, defendants had a "close, professional, relationship with Marshall and Swift and its majority partner," and at all times relevant herein, "defendants concurrently provided legal services to plaintiff, as an individual, J.W. Marshall, as an individual, and Marshall and Swift, a limited partnership," and did not obtain "the written consent or written waiver of the conflict of interest of plaintiff, J.W. Marshall, and F.C. Swift."

Plaintiff continued to work full-time as chief executive officer of Marshall and Swift; by the end of 1983, plaintiff's ownership interest in the partnership increased to 10 percent. In June 1986, defendants, plaintiff, J.W. Marshall, and F.C. Swift negotiated and agreed upon a definitive plan to implement plaintiff's incentive and compensation plan; the agreement was executed in August 1986, and "confirmed J.W. Marshall's and F.C. Swift's consent to and promise to implement the incentive plan 'within a reasonable period of time.'" Defendants also prepared "a document memorializing the

terms of plaintiff's Incentive and Compensation Plan in a document entitled 'Outline of New Marshall and Swift Compensation Plan,' which was attached as an exhibit and incorporated into the Agreement."

Plaintiff "relied upon and performed under the executed Agreement for nearly three years," and reinvested additional profits into the partnership. In March 1988, J.W. Marshall advised defendants that he wanted to rescind the agreement and replace it with some type of restructuring of the partnership. Defendants advised J.W. Marshall regarding the enforceability of the agreement. In March 1988, defendants first advised plaintiff that defendants' joint representation of plaintiff, the partnership, and J.W. Marshall, presented a potential conflict of interest "prohibited by Rule 5.102 of the Rules of Professional Conduct applicable to California lawyers, and requested a written waiver from the general partners of the actual or potential conflicts of interest." Thereafter, J.W. Marshall and F.C. Swift refused to continue performing under the agreement drafted by defendants, taking the position that the agreement was not legally enforceable against them.

On February 6, 1989, J.W. Marshall and F.C. Swift terminated plaintiff from his management position at Marshall and Swift and "wrongfully reduced his ownership interest in the partnership and substantially reduced his partnership draws." In January 1990, plaintiff filed a lawsuit against J.W. Marshall and Frank C. Swift seeking to enforce the terms of the agreement drafted by defendants. According to the allegations of the complaint, plaintiff's rights in the underlying action were contingent upon the enforceability of the agreement defendants drafted when they represented conflicting interests. Inasmuch as the agreement required that the issues in dispute be adjudicated by a panel of arbitrators, the matter was arbitrated. On April 19, 1993, the arbitrators issued a decision and award. According to the allegations of the complaint, the decision was "adverse to plaintiff's claims therein, determining that plaintiff was not entitled to the additional 45 percent equity interest in the partnership under the terms of the Agreement and Outline drafted by defendants, but also confirmed plaintiff's 15 percent interest in the partnership from January 1988 to the date of the award."[2]

On September 14, 1993, the trial court confirmed an arbitration award and ordered that it be entered as a judgment. Plaintiff alleges that it was not until

---

[2]According to the arbitration decision and award, "The Agreement in Principle was a binding and enforceable contract, which required each of the general partners to use [their] best efforts to (a) finalize the terms of the Marshall and Swift Compensation Plan . . . and (b) effect related amendments to the Marshall and Swift Limited Partnership Agreement ('Partnership Agreement'), presumably by signing such amendments . . . and attempting to persuade the Limited Partners to do so as well. These efforts were to be made within a reasonable period of time after the execution of the Agreement in Principle. . . . [¶] . . . It is clear that [plaintiff] complains that his equity interest in the Partnership was not increased

confirmation of the award that he sustained "an actual economic injury attributable to defendants' conduct." According to the allegations of the complaint, defendants breached their duties to plaintiff by representing conflicting interests without written consent of all parties, failing to make a full disclosure of all facts and circumstances affecting plaintiff's rights and interests in the incentive and compensation plan, and failing to advise plaintiff that the agreement did not adequately protect his entitlement to the incentive and compensation plan and of the courses of action needed to protect and implement the full benefits under the terms of the incentive and compensation plan. Plaintiff alleges that as a result of the negligence of defendants, plaintiff was required to protect his interests by bringing the underlying breach of contract action and he has lost wages, earnings, and increased equity interest in Marshall and Swift. The complaint sought general damages and special damages, including past and present loss of income, past and present value of the loss of increased equity interest in Marshall and Swift, and "compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures incurred in bringing the underlying action to enforce the terms of the Incentive and Compensation Plan."

Defendants demurred to the complaint on the ground that it was barred by the statute of limitations (Code Civ. Proc., § 340.6), alleging that plaintiff suffered actual injury at the time he discovered defendants' alleged breaches of duty in 1988, and when the partners "refused to continue performing

---

pursuant to the Compensation Plan. But it is not clear what 'best efforts' he contends respondents should have made in this respect: To finalize the Compensation Plan in relevant respects? To draft and sign necessary amendments to the Partnership Agreement? To present such amendments to [plaintiff] and the Limited Partners for signature? To attempt to induce each of the Limited Partners to sign such amendments? [¶] Whatever may be the breaches of contract by respondents of which [plaintiff] complains, it is clear that [plaintiff] breached the Agreement in Principle in all of the same respects. The obligations imposed by the Agreement in Principle fell on [plaintiff] no less than upon respondents. . . . [¶] We conclude that the Agreement in Principle was abandoned by the General Partners . . . . [¶] . . . It is true that abandonment of a contract is not lightly to be implied. However, in this case three partners signed a best efforts agreement, yet no effort was thereafter made by any of them to carry out any of its provisions, or to induce either of the other partners to do so, although more than one occasion arose where such action was called for under the three-part Compensation Plan. Based on this pattern of conduct, we conclude that the parties tacitly abandoned the contract as not workable in the family partnership situation in which they found themselves. . . . [¶] In an action inconsistent with the Agreement in Principle, respondents J.W. Marshall and F.C. Swift signed the Second Amendment to the Marshall and Swift Partnership Agreement, which by its terms increased the equity interest of [plaintiff] from 10.4167 percent to 15 percent, effective January 1, 1988. This increase is enforceable against respondents, but is not enforceable against the Limited Partners for equitable and other reasons." Although plaintiff was awarded an increase in his equity interest in the partnership to 15 percent from January 1, 1988, the arbitrators did not award him any other relief; nor did they award respondents J.W. Marshall and F.C. Swift any other relief.

under the Agreement" and took the position that the agreement was not legally enforceable against them. In opposition to the demurrer, plaintiff contended that his damage did not accrue until the arbitrators rendered their decision because it "was not until then that his claims regarding the enforceability of the Agreement were lost and the impact of the wrongful acts . . . caused plaintiff damage."

After hearing on April 14, 1994, the court sustained the demurrer without leave to amend.[3] The minute order for April 14, 1994, states in pertinent part: "The court finds that plaintiff's malpractice action is time-barred since it was filed on December 3, 1993, long after the limitations period expired." Judgment of dismissal was filed. Plaintiff filed timely notice of appeal from the judgment of dismissal.

I

STANDARD OF REVIEW

On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the reviewing court must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged. (*Rose* v. *Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 716 [3 Cal.Rptr.2d 483].) A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. (*Moseley* v. *Abrams* (1985) 170 Cal.App.3d 355, 359-360 [216 Cal.Rptr. 40].) In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155 [281 Cal.Rptr. 827].)

"[Code of Civil Procedure section 340.6] provides in pertinent part that 'An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be

[3]The hearing occurred before the December 1994 decision of *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965], which the trial court perceived to involve dispositive issues. The court herein stated at time of oral argument that "There is nothing that this court would like to have in its hands more than the Supreme Court ruling in the ITT case. But, unfortunately, the court does not have the benefit of the seven Justices' wisdom on this particular issue. And the court, instead, will have to draw upon what limited wisdom this court has."

commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . , whichever occurs first.' (§ 340.6, subd. (a); hereafter section 340.6 (a).) There are four exceptions to the limitations period, including a provision tolling the statute while '[t]he plaintiff has not sustained actual injury.' (§ 340.6, subd. (a)(1); hereafter section 340.6 (a)(1).) That provision is the focus of this appeal." (*ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th 245, 249-250.)

"We emphasized in [*Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], a legal malpractice action involving negligence in the handling of a client's litigation] that the focus of the limitations period is on the fact of damage or actual harm giving rise to a cause of action in negligence, not the amount of damage, and disapproved language from earlier cases implying that actual harm may always occur at the point the client initially suffers monetary damage, including attorney fees, as a result of the negligence." (*ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th at p. 250.) "Since *Laird,* several Courts of Appeal have struggled with the question of when 'actual injury' occurs under section 340.6 (a)(1) in cases involving 'transactional malpractice,' or malpractice that is based on the negligent preparation of documents that causes the client harm. This is an issue separate from that addressed in *Laird,* but one subject to analogous reasoning." (*Ibid.*) "Consistent with our reasoning in *Laird,* . . . we conclude that in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage *and* suffered 'actual injury' due to the malpractice under section 340.6. Therefore, in the present case, the statute of limitations of section 340.6 was tolled until the action contesting the documentation was concluded." (*Id.,* at p. 258.)

The court in *ITT* found that the legal malpractice action had been timely filed, but cautioned also that "Our holding is narrow, and limited to the circumstances typified by this case." (9 Cal.4th at p. 258.) In that case, ITT alleged that its attorney negligently prepared loan documents for its loan to a third party; that ITT was forced to defend a legal proceeding brought by that third party challenging the adequacy of the loan documents; and that ITT was compelled to enter into a settlement agreement with the third party for an amount less than the value of its security because of the negligent preparation of the loan documents. ITT was held to have timely filed its action for legal malpractice two months after settlement of the third party proceeding, although the proceeding had been pending for almost two years.

The Supreme Court in *ITT* also impliedly approved of the reasoning of the court of appeal, which had also concluded that ITT did not suffer actual injury until settlement of the prior adversary proceedings: "Although ITT incurred attorney fees in defending the loan documentation, the nexus between the discovery of malpractice and 'actual injury' that is required before a cause of action for legal malpractice will accrue did not occur until settlement of the adversary proceeding. Had ITT prevailed in the adversary proceeding, it would have suffered no 'actual injury' from the initial attorney's preparation of the loan documents, just as the plaintiff in *Laird* suffered no 'actual injury' until the moment the trial court dismissed her complaint." (*ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th at p. 251.)

In this case, appellant contends, as is alleged in his complaint, that he did not sustain "actual injury" within the meaning of Code of Civil Procedure section 340.6 until the adverse decision in the underlying breach of contract action. Appellant maintains this case falls squarely within the *ITT* holding. Respondents, on the other hand, contend that appellant suffered injury no later than February 1989 when he was terminated and removed from his management position at Marshall and Swift, and that appellant's "ability to contend that his lawyers acted improperly was not contingent on the outcome of the litigation between [appellant] and his partners." Respondents also maintain, somewhat disingenuously, that no matter how the arbitrators resolved appellant's claims against his partners, his "allegations against respondents would survive," and "tolling the statute could never have protected respondents from needless litigation or saved judicial resources."[4]

When we evaluate the complaint in light of the foregoing principles, we conclude that the allegations reasonably can be construed to fall within the holding of *ITT*, so that the sustaining of the demurrer constituted error.

---

[4]What respondents appear to be arguing here is that even had appellant prevailed in his breach of contract action, he could still have sued respondents for malpractice, presumably on the theory that respondents' negligence precipitated or allowed J.W. Marshall and F.C. Swift to repudiate the contract, thus requiring plaintiff to bring an action against them to enforce his rights, and causing plaintiff to incur attorney fees and costs. We fail to see the pertinence of the foregoing argument, unless it is to concede that even had appellant prevailed in the underlying action he could still sue respondents for damages for attorney fees and costs. However, without conceding the correctness of this argument, we note that it does nothing to resolve the issue of whether the instant complaint shows on its face that it is barred by the statute of limitations. We do not here address, or intend to address, any issues of whether a claim for malpractice could be asserted had appellant prevailed in the underlying action, and, if so, when such a claim would accrue.

## II

### BAR OF STATUTE OF LIMITATIONS DOES NOT APPEAR ON FACE OF COMPLAINT OR BY MATTERS JUDICIALLY NOTICED

The instant complaint alleges that respondents' negligence included, among other things, the failure to advise appellant that the 1986 agreement did not adequately protect his entitlement to the incentive and compensation plan, and the failure to advise him of the courses of action needed to protect his rights under, and implement, the terms of the incentive and compensation plan. As we read the arbitrators' decision in the underlying case, the arbitrators found that the August 1986 agreement had been abandoned by the parties as of January 1, 1988, because of the parties' conduct in failing to carry out its provisions, including the drafting of an inconsistent second amendment to the partnership agreement, and the partners' execution of the amendment, apparently on January 1, 1988. According to the allegations of the complaint, it was not until March 24, 1988, that respondents first advised appellant that their joint representation of his individual interests and the interests of the partnership and of J.W. Marshall presented a potential conflict. Further, it was not until after March 1988 that J.W. Marshall and F.C. Swift allegedly took the position that the agreement was not enforceable and then in February 1989 terminated appellant from his management position at Marshall and Swift.

In other words, a reasonable inference from the allegations of the complaint and the matters of which the trial court took judicial notice, is that the prior breach of contract action involved the adequacy of the documentation to support appellant's claims, as well as the adequacy of respondents' advice to appellant concerning the preservation of appellant's rights under the agreement. Because respondents were allegedly acting as appellant's agents and allegedly had undertaken to provide appellant legal advice with respect to the documents and in connection with subsequent negotiations involving these documents, and because the decision adverse to appellant in the underlying case was based on such documents and transactions, the complaint has adequately alleged a relationship or nexus between the alleged legal malpractice and appellant's loss of rights or benefits under his agreement with the partners of Marshall and Swift. Because of this alleged relationship of the two issues, the complaint adequately alleges that appellant sustained "actual injury" within the meaning of Code of Civil Procedure section 340.6 at the time of the arbitrators' decision.

Under these circumstances, the pleading shows that this case may fall within the facts and holding of *ITT* because, in the underlying action, the

adequacy and enforceability of the documentation respondents prepared for appellant was allegedly the subject of dispute. (*ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th at p. 258; see also *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606, 620 [38 Cal.Rptr.2d 150, 888 P.2d 1279].[5]) In *Feddersen,* which involved accountant malpractice in filing tax returns, the court held that the cause of action in tort against the accountant accrued on the date of the deficiency tax assessment or finality of the audit process (9 Cal.4th at p. 620), although the plaintiff may have discovered the accountant's alleged negligence during the audit and may have suffered "palpable harm" when a bank reduced plaintiff's line of credit in anticipation of a potential tax liability. As explained in *Feddersen,* "[A]ctual injury occurred when the IRS issued its penalty tax assessment [in 1988] . . . rather than [in 1986] when [plaintiff] withdrew its settlement offer in an unrelated lawsuit, or when the company's bank reduced its line of credit by $200,000 in anticipation of [plaintiff's] potential tax liability. Although these two latter events may represent palpable harm caused by the malpractice of the accountant, they are based on a *tentative* assessment of

---

[5]In discussing *ITT,* the court in *Feddersen* remarked: "In *ITT,* we held that until bankruptcy litigation concerning the effectiveness of [the] loan documents is settled, the question whether the attorney has actually committed malpractice has not been resolved." (*International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 9 Cal.4th at p. 619.) We do not interpret this language to mean that the prior litigation involving the documents actually resolves the issue of whether legal malpractice has occurred, as that construction would seem to imply, erroneously, that the issue of legal malpractice is actually litigated or decided in the prior action. Rather, the only reasonable construction of this language is that the prior action resolves the issue of injury to the legal malpractice plaintiff with respect to third parties, so that the plaintiff is no longer placed in the untenable position of having to allege inconsistent facts in a malpractice action that could be used against him in his action with third parties.

For example, it is clear that the prior action in the instant case resolved the issue of injury to appellant Marshall with respect to his rights under the agreement. We infer from the complaint that in the transactions involving the drafting and implementation of the agreement, appellant's attorneys allegedly were advising him and/or acting as his agent so that their actions would be attributable to appellant in his action involving third parties. Thus, in the subsequent legal malpractice action against his attorneys, appellant seeks to establish that the attorneys' negligent advice and/or conduct in acting as his agent was a cause of the prior adverse decision or judgment. Based on policy reasons arising out of the positions of parties who are asserting rights in actions with third parties based on documents prepared by their attorney, the courts in both *ITT* and *Feddersen* held that "actual injury" under Code of Civil Procedure section 340.6 accrued upon a judicial or administrative determination adverse to the party's interests. Thus, as acknowledged by *Feddersen,* the term "actual injury" represents a "term of art" (9 Cal.4th at p. 620) based upon certain policy reasons present in the circumstances of that case. Thus, we read *ITT* and *Feddersen* as requiring more to establish "actual injury" to the legal malpractice plaintiffs therein than simply the breach of a contract to which plaintiff is a party or the assertion of unadjudicated adverse claims against plaintiff by third parties. For this reason, neither *ITT* nor *Feddersen* supports respondents' claim that "actual injury" occurred here when the underlying agreement was allegedly repudiated by the other partners of appellant, or when appellant was terminated from his position at Marshall and Swift.

*potential liability* only. Although Feddersen's alleged negligence may have been 'discovered' during the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process." (*Ibid.*, original italics.)

The court in *Feddersen* supported the rule enunciated therein with the following policy considerations: "The foregoing rule both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending. It also avoids requiring the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error (or mitigate the consequences thereof) during the audit process." (*International Engine Parts, Inc.* v. *Feddersen & Co., supra*, 9 Cal.4th at p. 620.)

Similar policy considerations were acknowledged in a case involving legal malpractice in allowing the statute of limitations to expire on the client's medical malpractice claim. In *Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841 [22 Cal.Rptr.2d 663], the court applied *Laird* and rejected the approach of *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436 [13 Cal.Rptr.2d 406], which purported to limit *Laird*. "The *Finlayson* decision does not offer a compelling reason for disregarding the bright line rule established in *Laird* v. *Blacker*. Relying on an Indiana Court of Appeal decision, the *Finlayson* court concludes that actual damage is sustained as soon as the statute of limitations expires in the underlying suit—even if no court has determined at what point that might have occurred. The decision seems to assume that it is obvious at what point the statutory deadline expires, even though this is often a hotly contested issue, given the various tolling and estoppel principles that can be asserted. [¶] The *Finlayson* court does not explain why missed statute of limitations cases are different from any other attorney negligence cases: Why did the harm not occur at the time the attorneys failed to prosecute the plaintiff's case in *Laird* v. *Blacker*? Why did the Supreme Court conclude that only a *judicial* determination of a failure to prosecute served to establish actual harm? Why did the harm not occur on the last day plaintiff could have served the defendants in the underlying suit in *Troche* v. *Daley* [(1990) 217 Cal.App.3d 403 [266 Cal.Rptr. 34]]? Why did the Court of Appeal conclude that only a *judicial* determination of untimely service could start the statute of limitations? Is a plaintiff harmed by her attorney's failure to file a timely lawsuit, even if it never occurs to the defendants in the underlying suit to assert a statute of limitations defense? Under *Finlayson*, the answer would be "yes." Taken to its extreme, *Finlayson* would oblige a plaintiff to sue a former attorney upon discovering that the attorney filed the complaint late—even if the defendants do not realize the suit against them is

untimely. [¶] The peculiar results that might be spawned by the *Finlayson* reasoning were foreseen by the Oregon Supreme Court, albeit in a different type of case, in *United States National Bank of Oregon* v. *Davies* (1976) 274 Ore. 663 [548 P.2d 966]. The court there recognized that in many cases it is impossible to determine whether a client has been harmed by his attorney until the ultimate determination of the underlying suit, due to the closeness of the legal issues. [Citation.] The court commented upon the pitfalls of obliging a client to sue his attorney before the underlying suit is resolved: 'Plaintiff's decedent could have played it safe by filing an action against defendants [his attorneys] immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.' " (*Pleasant* v. *Celli*, *supra*, 18 Cal.App.4th 841, 848-849.)

The court in *Pleasant* applied the foregoing analysis under the circumstances there presented: "Celli would have Pleasant simultaneously resist the statutory defense asserted by the medical defendants by arguing that her case was timely filed, while at the same time, inconsistently, she would have a lawsuit pending against [Celli, her former lawyer] averring that her suit against the medical defendants was *not* timely filed. Needless to say, the admissions contained in the legal malpractice suit would have a detrimental effect on the contrary argument being maintained in the underlying medical malpractice suit." (*Pleasant* v. *Celli*, *supra*, 18 Cal.App.4th at pp. 849-850.)

The same incongruous result would occur in the circumstances of this case were appellant required to bring a lawsuit seeking to enforce the underlying agreement and the incentive and compensation plan, and simultaneously to maintain a legal malpractice action in which he alleged, and sought to prove, that due to respondents' negligence, he did not take adequate steps to protect his entitlement to the benefits of the agreement and incentive and compensation plan. (See fn. 5, *ante*.) For the foregoing reasons, we conclude that the instant complaint contains sufficient allegations showing that the claims may

fall within the rule set out in *ITT*. Moreover, the instant circumstances and policies discussed above distinguish this case from two cases cited by respondents, *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837], and *Bennett* v. *McCall* (1993) 19 Cal.App.4th 122 [23 Cal.Rptr.2d 268], which are not dispositive or instructive here. We also note that respondents have not brought to our attention any authority to support their contentions that under the circumstances here alleged, appellant sustained "actual injury" within the meaning of Code of Civil Procedure section 340.6 at the time that appellant was terminated from his management position at Marshall and Swift or at the time that the agreement was repudiated by the other partners of the partnership.[6]

On the instant record, the bar of the statute of limitations remains a triable issue which cannot be resolved in respondents' favor on the instant pleadings and the matters judicially noticed. Accordingly, the trial court erred in sustaining the demurrer.

### DISPOSITION

The judgment of dismissal is reversed and on remand the trial court is directed to overrule the demurrer and afford defendants a reasonable time within which to answer the complaint. Appellant is entitled to his costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.

A petition for rehearing was denied September 14, 1995, and respondents' petition for review by the Supreme Court was denied December 14, 1995.

---

[6]Respondents' reliance on *Radovich* v. *Locke-Paddon* (1995) 35 Cal.App.4th 946 [41 Cal.Rptr.2d 573] is misplaced as that case is factually distinguishable, the court concluding therein that "because there is no 'underlying action,' this matter does not come within *ITT*'s 'narrow' holding that actual injury in a transaction malpractice case is to be established by 'entry of adverse judgment, settlement, or dismissal of the underlying action.' [Citation.]" (35 Cal.App.4th at p. 974.)