Filed 8/7/23  KB Home Nevada v. Steadfast Ins. Co. CA 2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KB HOME NEVADA INC., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY et al.,<br><br>Defendants and Respondents. | B318390<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV07601) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Reversed and remanded with directions.

Newmeyer & Dillion, Gregory L. Dillion, John A. O'Hara and C. Kendie Schlecht for Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad and Melissa B. Whalen; Sinnott, Puebla, Campagne & Curet, Randolph P. Sinnott and Winnie Ching-Lan Louie for Defendants and Respondents.

———————————

A homebuilder obtained insurance coverage for construction defects in its projects; the policies provided for a sizeable self-insured retention before the insurer's obligations were triggered. Many years into the adjustment of claims under the policies, the homebuilder learned that the parties had been omitting from their accounting numerous homebuilder repair costs which the builder believed should have been credited to its self-insured retention. The result was that the insurer took over the defense and indemnification obligations later than it should have and the homebuilder incurred significant damages. The homebuilder sought a refund of the excess amounts it paid. When the insurer failed to agree, the homebuilder brought suit. The insurer successfully demurred on statute of limitations grounds – arguing that although it did not know precisely when the refund claim accrued, it must have been early in the adjustment process. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Underlying Facts*[1]

Plaintiffs and appellants are KB Home Nevada Inc., KB Home Phoenix Inc., KB Home South Bay Inc., and their corporate parent, KB Home (collectively, KB Home). KB Home is in the

---

[1] As this case was resolved on demurrer, we take our discussion of the facts from the operative first amended complaint and the exhibits attached to it. (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951 955 [on demurrer, we deem the allegations of the complaint to be true; however, when the allegations are inconsistent with unambiguous written instruments incorporated by reference, the written instruments control].)

business of constructing residential housing projects – the individual projects consist of dozens or hundreds of homes.

Beginning in 2003, homes purchased in California have been subject to the Right to Repair Act.[2]  (Civ. Code, § 895 et seq.)  Under this law, before a homeowner can bring suit for a defect in new residential construction, the homeowner must give notice to the builder, and give the builder an opportunity to repair the defect at its expense.  (Civ. Code, §§ 910, 917, 921.)  With certain exceptions set forth in the statute, the Right to Repair Act also provides a 10-year statute of repose for actions to recover for those defects.  (Civ. Code, § 941, subd. (a).)

Possibly, but not necessarily, coextensive with its obligations under the Right to Repair Act, KB Home provided its residential homebuyers with a Home Builder's Limited Warranty.[3]  KB Home's warranty obligations to its homeowners extended for 10 years from close of escrow on the homes.

Defendant and respondent Steadfast Insurance Co. offered a Home Builders Protective Insurance Policy.  This policy included, as Coverage C, a Home Builders Limited Warranty

---

[2]     KB Home's operative complaint discusses California law as a background for the insurance policies at issue.  The policies, however, insured developments in Arizona and Nevada, as well as California.  KB Home did not plead, and the parties do not discuss, whether the laws in these other states are similar or apply.

[3]     The Right to Repair Act permits a homebuilder to offer "greater protection or protection for longer periods" than that set forth in the statute, but it cannot offer lesser protection.  (Civ. Code, § 901.)  No exemplar of KB Home's warranty is in the record on appeal; we therefore do not know its terms.

3

coverage, under which Steadfast agreed to pay the repair costs its insured was obligated to pay under the Home Builder's Limited Warranty policies issued to its home buyers.[4]  Under this coverage, Steadfast also agreed that it had the right and duty to defend against any suit seeking those repair costs.

There were a number of exclusions to the warranty coverage under Coverage C.  Relevant to this lawsuit, the policies excluded coverage for repair costs for a construction defect which first arose within 12 months of the first sale of the home.[5]

Coverage C was not first dollar coverage.  Instead, Steadfast's obligation applied only to damages or repair costs in excess of a self-insured retention.  The policies at issue had two different self-insured retention amounts – one per "occurrence" and one per "project."

KB Home purchased five policies from Steadfast.[6]  The first two were purchased by its Nevada subsidiary, covering February 1, 2004 – February 1, 2005, and February 1, 2005 –

_____

[4]    Coverage C was different from, and in addition to, insurance provided under Coverage D, for construction damage liability.

[5]    The exclusion had some exceptions.  First year repair costs were not excluded if the defect was a structural failure or design flaw that threatened the integrity of the home or a defect that involved the use of defective materials.

[6]    There is a disagreement between the parties as to whether the policies should be considered five separate policies, or three policies, two of which were renewed.  We do not intend to express an opinion on this, or any other, factual disagreement between the parties.

February 1, 2006; two more were purchased by the Phoenix subsidiary, from June 1, 2003 – June 1, 2004, and June 1, 2004 – June 1, 2005; and the last by the South Bay, California subsidiary from February 1, 2005 – February 1, 2006. The self-insured retention amounts were not the same across all policies. In addition, some of the language governing Coverage C was modified in later policy years.

Specifically, the policies beginning in 2005 (i.e., the second Nevada policy and the South Bay policy), but not the earlier policies, required KB Home to "employ a claim service provider" acceptable to Steadfast "for the purpose of providing claims services for settlement of losses within the 'self-insured retention' amounts."[7] Even before it was required by the policies, KB Home hired, allegedly at Steadfast's insistence, Zurich Services Corporation to act as its claim service provider, to process claims within its self-insured retention.[8] According to KB Home, Zurich was a sister company to Steadfast and, unbeknownst to KB Home, Zurich acted with divided loyalties.

---

[7] The operative complaint alleges that "[a]s a requirement of coverage under the [Steadfast] policies, Plaintiffs were to employ a claim service provider, acceptable to Steadfast . . . ." But the terms of the attached policies themselves show that this was a requirement only of the second Nevada and the South Bay policies.

[8] Zurich, and its agent John Diemer, were originally named as defendants in this action. Those defendants ultimately prevailed on demurrer. KB Home's notice of appeal was ambiguous as to whether it encompassed Zurich and Diemer. KB Home has since made clear that it does not challenge the dismissal of Zurich and Diemer.

For some time, the system appeared to work. Zurich adjusted warranty claims within the self-insured retention, and KB Home paid those claims. Steadfast was not involved in those claims. Once the parties determined that one of the self-insured retention amounts had been exceeded, Steadfast took over.

### 2.    *KB Home Seeks a Refund*

KB Home alleges that "[i]n or about 2018, [it] became aware that [Zurich] may not have been tracking all [self-insured retention] amounts or may have been inaccurately, incorrectly and inconsistently tracking [self-insured retention] amounts under the [policies] on one or more projects, and that [KB Home] may not have received full credit for expenditures that should have counted toward erosion of their [self-insured retention] obligations and may have overpaid their [self-insured retention] obligations." KB Home then conducted an "internal audit" of its expenses related to a single residential project, a Nevada development called "Liberty at Mayfield," and concluded it had overpaid nearly $200,000 in self-insured retention expenses before Steadfast took over the claims on that project.

On July 3, 2018, KB wrote the corporate parent of both Steadfast and Zurich, seeking reimbursement for the $200,000 overpayment on Liberty at Mayfield. While the underlying merits of the dispute are not before us, it appears that the claim was partially based on KB Home's belief that, although there was no coverage under Steadfast's policy for first-year repair expenses, those expenses should nonetheless count toward KB Home's self-insured retention.[9]

---

[9]    Other areas of dispute were whether KB Home was entitled to charge against the self-insured retention an amount for

According to KB Home's operative complaint, Steadfast did not timely reply and instead "unreasonably demand[ed]" KB Home submit lot-by-lot invoices to support its claim.[10] Thereafter, Steadfast said it would not respond to the Liberty at Mayfield claim until KB Home provided audits on all other Nevada projects for which it believed it might be entitled to a refund. KB Home therefore audited its self-insured retention for other Nevada projects. On June 3, 2019, it submitted an additional claim for reimbursement, now seeking over $10 million in allegedly overpaid self-insured retention payments for a total of 12 Nevada projects.

KB Home alleged that Steadfast repeatedly indicated it would respond to the claim but failed to do so. In 2020, while KB Home was waiting for a response that never came, it audited Arizona and California projects, finding an additional $3.5 million it believed it overpaid in self-insured retention obligations on three additional projects. It did not submit these claims to Steadfast prior to this lawsuit.

---

overhead expenses related to warranty repairs it conducted itself; and whether there was a second "per project" self-insured retention for projects which overlapped two policy years.

[10] KB Home attached to the operative complaint a lengthy June 3, 2019 letter from KB Home's counsel to Steadfast's counsel, responding to a November 21, 2018 letter from Steadfast's counsel. The November 21, 2018 letter is not part of the record. We therefore only know Steadfast's position through KB Home's characterization of it in KB Home's responsive letter and its complaint.

### 3.  *Proceedings Leading to the First Amended Complaint*

On February 25, 2021, KB Home filed suit against Steadfast, Zurich and Diemer.  On April 5, 2021, Zurich removed the matter to federal court.  There, Steadfast answered and asserted the statute of limitations as an affirmative defense.  On June 10, 2021, the district court granted KB Home's motion to remand the matter to state court.

On July 13, 2021, back in Los Angeles Superior Court, Zurich and Diemer demurred to the complaint against them on the merits.  (Those parties did not raise a statute of limitations ground for demurrer.)  The trial court sustained the demurrer with leave to amend.  The court's minute order addressed other issues the court raised on its own.  Although the parties had not briefed the issue, the court expressed concern about the initial complaint not clearly setting forth the terms of the relevant policies or defining necessary terms of art.  In addition, the court stated, "The plaintiffs have also alleged that the coverages in the policies in issue ended in 2006 or earlier, this poses a statute of limitations problem on the face of the complaint depending upon whether or not they were claims made policies or event occurrence policies.  Hopefully, on[c]e the contracts are on file, there will be a clarification on this point."

### 4.  *KB Home's Operative First Amended Complaint*

On August 24, 2021, KB Home filed its first amended complaint, which alleged causes of action against Steadfast for breach of contract and bad faith.[11]  It attached as exhibits: all five

---

[11]  The complaint includes three breach of contract causes of action – one for each of the three KB Home geographical subsidiaries (Nevada, Phoenix, and South Bay).  There is only

insurance policies; a sample claim service agreement with Zurich; KB Home's July 2018 and June 2019 letters seeking reimbursement from Steadfast; and some spreadsheets supporting its calculations. The latter will become relevant to our discussion. The key fact is that, although the spreadsheets purport to set forth KB Home's self-insured retention payments on a project-by-project basis, they do not set forth the expenses year-by-year. Instead, expenditures are separated between first year expenses and post-first year expenses.[12]

Perhaps because the trial court in its minute order had raised the statute of limitations as a possible defense, KB Home's first amended complaint included allegations relating to the accrual of its claim, delayed discovery, and equitable tolling. Delayed discovery and equitable tolling are unnecessary to our

one cause of action for bad faith, pursued only by the KB Home parent and the Nevada subsidiary, based, in part, on Steadfast's failure to respond to its refund claim.

[12] For example, the spreadsheet for the Chaco Canyon project shows the contractual $500,000 self-insured retention. It shows a total first year warranty expenditure of $16,579.88, leaving a remaining self-insured retention, after first year expenses, of $483,420.13. (The calculation is a penny off.) There follows a heading entitled, "Amounts paid in excess of the [self-insured retention] or toward remaining [self-insured retention] and six different expenses, which add up to $971,058.14. Subtracting from that amount the remaining retention of $483,420.13, results in an "Amount Owed to KB Home" of $487,638.02. (This calculation assumes, as KB Home contends, that first year warranty exclusion amounts, although paid directly by KB Home, are to be included in determining when the $500,000 retention has been reached.)

9

resolution of this appeal. Accordingly, we limit the remainder of our recitation of this section (and the ensuing Discussion) to the issue of claim accrual.

KB Home first alleged that the Steadfast policies provided coverage for defect claims made for 10 years following the close of escrow. It next alleged that, although its Home Builder's Limited Warranty was 10 years long, and the corresponding statute of repose was also 10 years, covered expenses could and did occur well after that 10-year period following the close of escrow. Specifically, KB Home alleged that "more often than not, the construction defect plaintiff bar would be successful in convincing large numbers of individual plaintiff homeowners (or the homeowner's association) on each project to retain them on a contingency fee basis to bring a construction defect claim under the [Right to Repair] Act against [KB Home] shortly prior to expiration of the 10-year statute of repose. These claims would typically start a 3-8 year process of defending the claim, attempting to settle the claim, or taking the claim to trial and on appeal."

## 5. *Steadfast's Demurrer*

On October 13, 2021, Steadfast filed its demurrer on statute of limitation grounds. Steadfast did not support its motion with a request for judicial notice; it argued the first amended complaint was time barred on its face.

The statute of limitations for breach of contract is four years. (Code Civ. Proc., § 337.) Since KB Home filed suit on February 25, 2021, Steadfast sought to establish that KB Home's breach of contract claim accrued before February 25, 2017.

Steadfast argued that KB Home's claim for refund of the alleged overpayments accrued when the self-insured retention

10

overpayments were made and (according to KB Home) Steadfast should have begun paying under its policies. But Steadfast did not follow this argument with any specific facts showing when that point in time might have been, based on KB Home's view of which payments should have been credited against its self-insured retentions. Nor did Steadfast support the demurrer with any evidence of when it had, as a factual matter, taken over the repair costs on the relevant projects – a date which, of necessity, would have been after KB Home's claim arguably accrued on each project.

Instead, Steadfast's argument was based on sweeping generalities. Because the latest of its five policies ended on February 1, 2006, it reasoned that KB Home's warranty obligations ended ten years later, on February 1, 2016. Steadfast argued, "the February 1, 2016 end of the warranty agreements is the hard stop for any alleged warranty repair obligations of KB [Home]."[13] Steadfast argued that since the "Latest Possible

---

[13] Steadfast supported this proposition with KB Home's alleged acknowledgement that it performed warranty repairs "promptly." It cites paragraph 45 of the first amended complaint for this proposition. Paragraph 45, does, in fact, begin with an assertion that KB Home kept its "end of the bargain by performing prompt warranty and customer service work on dozens of projects and hundreds of homes for up to ten years from the close of escrow on each home at a cost of multiple tens of millions of dollars." However, that same paragraph goes on to allege, "Further, construction defect suits for a project are often filed 8 or 10 years after the close of escrow of the homes in the project in order for plaintiff homeowners to get in under the 10-year statute of repose for construction defect actions. There also are situations where the statute of repose may be extended beyond 10 years. [KB Home] typically respond[s] to and

11

Warranty Repairs" were February 1, 2016, that is the latest date on which the statute of limitations could have begun to run. Therefore, the latest date to file a breach of contract action was February 1, 2020, and the February 21, 2021 complaint was untimely by more than a year.

Steadfast also argued that, by definition, self-insured retentions are exhausted first, before the insurer's obligation is triggered. "In other words, KB [Home] alleges that the [self-insured retention] sums at issue in the [first amended complaint] were paid out in the earliest years of Steadfast's coverage and the home warranties, well outside the limitations period." (Emphasis omitted.) Again, however, Steadfast did not support this with any project-by-project, year-by-year analysis showing when,

---

defend[s] construction defect lawsuits for 3-5 years and more beyond the 10-year statute of repose to the extent that the applicable [self-insured retention] has not yet been met or satisfied by [KB Home]. This time period can stretch to 8 years and more if there are appeals." Consider the last policies, ending February 1, 2006. Under KB Home's alleged facts, a construction defect lawsuit can be filed against it right before the 10-year statute of repose runs (i.e., in January 2016). If that case is appealed, KB Home could be making covered payments (both defense costs and settlement or judgment expenses) for as many as eight years after the suit is filed (into 2024). If *those* expenses were the ones that exceeded KB Home's self-insured retention on a project, KB Home's claim would not accrue (and the statute would not start running) until those expenses were paid – possibly as late as 2024. Steadfast's demurrer does not address this part of paragraph 45, which directly alleges covered expenses occurring well after the 10-year "hard stop" Steadfast asserts.

12

exactly, KB Home alleged any self-insured retention was exhausted.

Steadfast very briefly addressed the bad faith cause of action, arguing that the statute was either two or four years, depending on whether the claim sounded in tort or contract. Steadfast pointed out that KB Home sought tort damages for this cause of action. "Therefore," it argued, "the statute of limitations for [the bad faith cause of action] is two years, and expired long ago."

### 6.    *KB Home's Opposition*

KB Home's opposition argued, on the issue of accrual, that covered expenses, in the form of litigation costs, did, in fact, occur significantly beyond the 10-year initial warranty period. It repeated its allegation that "more often than not," the construction defect plaintiffs' bar would "convinc[e]" homeowners to bring suit "shortly prior to expiration of the 10-year statute of repose," commencing litigation that would run for three to eight years.

As to the bad faith cause of action, KB Home argued that a cause of action for bad faith claim denial accrues at the time the claim is denied, but Steadfast never actually denied its refund claim. KB Home relied on its allegations that Steadfast had promised to respond, but never did.

### 7.    *Steadfast's Reply*

In reply, as to breach of contract, Steadfast again argued that the cause of action accrued, and the statute of limitations began to run, at the time of the alleged self-insured retention overpayments. Steadfast argued that by definition, this would have occurred in the early years of the policies and, in fact, before

13

the date on which Steadfast began paying benefits on a particular claim. Steadfast did not at any time during briefing request judicial notice of the dates on which Steadfast began paying those benefits.

As to bad faith, Steadfast argued that KB Home is not suing it for bad faith denial of a claim, but simply to recover overpayments in a contract sense. Therefore, the law governing accrual of a cause of action for bad faith denial of a claim does not apply.[14]

## 8. *Hearing, Ruling, Judgment and Appeal*

After a hearing, which was not reported, the trial court took the matter under submission. On November 17, 2021, it issued its ruling sustaining the demurrer without leave to amend.[15]

The court concluded that the causes of action began to run once the self-insured retention overpayments were made. However, the court appeared to believe that coverage applied only to homeowner claims that were made during the policy period, not the entire 10-year warranty period. The court explained, "The coverages were for occurrences (not claims made) taking place through the policy periods which ended as to two plaintiffs in about February of 2006 and as to the other in June of

---

[14] At the same time, Steadfast stated, "there was a tender and denial years and years ago . . . ." It is not clear to what "tender" or "denial" it was referring.

[15] The court indicated that it would, however, entertain a motion for reconsideration setting forth additional facts plaintiffs could allege to cure all of the defects the court identified in the first amended complaint. No such motion was filed.

14

2005.  Therefore, even if it took 10 years to do all of the work necessary to resolve one of these claims were it filed during the period of the policy, it still would not serve to toll the statute as to the recovery sought in these cases because the statute of limitations started to run, based on the case law from Steadfast, as soon as the plaintiff's payment of their deductible had been met, or, in this court's view, possibly a little later meaning when Steadfast delayed taking over a claim until more than the deductible had been satisfied. . . .  Moreover, plaintiffs have not even been able to point to a single case where there may someday be some inadequate performance in satisfying a customer claim who has claimed damages from the construction company which might give rise to suit.  Again, that is not this case, and should it ever occur, presumably a separate suit based on that might then be filed."

The court interpreted KB Home's bad faith claim as simply a misstated breach of contract claim, and concluded it added nothing to the complaint and, in any event, was time-barred for the same reason.

Judgment of dismissal was entered on January 3, 2022.  KB Home filed a timely notice of appeal.

## *DISCUSSION*

### 1.    *Standard of Review*

"On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the reviewing court must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged.  [Citation.]  A demurrer based on a statute of limitations will not lie where the action may be, but is

15

not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)

" '[I]t is difficult for demurrers based on the statute of limitations to succeed because (1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. [Citation.] Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed.' " (*Schmier v. City of Berkeley* (2022) 76 Cal.App.5th 549, 554.)

2. ***The Breach of Contract Causes of Action Accrued No Earlier Than When the Alleged Overpayments Were Made***

" ' "Liability insurance policies often contain a 'deductible' or a 'self-insured retention' (SIR) requiring the insured to bear a portion of the loss otherwise covered by the policy." ' [Citation.] ' "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy. It is often referred to as a 'self-insured retention' or 'SIR.' " ' [Citation.] Although an SIR is, in some ways, similar to a deductible in an insurance policy, '[u]nlike a deductible, which

16

generally relates only to damages, an SIR also applies to defense costs and settlement of any claim.' [Citation.] Another difference is that the SIR does not reduce available policy limits. [Citation.] Rather, the policy limits apply on top of the SIR." (*Deere & Co. v. Allstate Ins. Co.* (2019) 32 Cal.App.5th 499, 505.) "In other words, a deductible represents a portion of a covered loss lying *within* the terms of the policy. [Citation.] Whereas, a retention is the initial portion of a loss that lies *outside* the policy. [Citation.] It represents the risk the insured has agreed to retain for itself before coverage is triggered." (*Ibid.*)

A district court case has discussed when a claim for refund of overpaid self-insured retention payments accrues. *National Steel and Shipbuilding Co. v. Century Indemnity Co.* (S.D. Cal. 2013) 959 F.Supp.2d 1264 was concerned with an employer who had obtained insurance – with a sizeable self-insured retention – for workers' compensation payments. (*Id.* at p. 1268.) The employer concluded that it had overpaid its self-insured retention with respect to two employees in 2002, and submitted a request for refund in 2009, ultimately bringing suit in 2012. (*Id.* at p. 1278.) Although the district court granted the insurer summary judgment on the merits, it also found the action time-barred. The court explained that the statute of limitations runs when a party knows or should know the facts essential to its claim. "Applied here, [the insured's] cause of action against [its insurer] began to accrue when the accounts of [the injured employees], respectively, exceeded the self-insured retention amount of $250,000. According to [the insured's] exhibits, the $250,000 limit with respect to both [employees] was reached in 2002. [Citations.] Thus, the statute of limitations on these claims began to accrue in 2002, when [the insured] could have

17

sought indemnification from [the insurer] under the theories espoused here. Consequently, the four-year limitations period expired in 2006. Because [the insured] did not file the present action until 2012, its claims are barred." (*Ibid.*)

It is unnecessary for us to determine whether a claim for refund of overpaid self-insured retention payments necessarily accrues at the time the payment exhausting the retention occurred or if, to the contrary, the claim does not accrue until a demand for the repayment is made and rejected. What is certain, however, is that the claim could not possibly accrue *before* the payment allegedly exhausting the retention occurred. The statute of limitations on KB Home's breach of contract causes of action could accrue no earlier than when KB Home exceeded its self-insured retention amounts and could have sought indemnification from Steadfast on the underlying claims. We assume, without deciding, that this earlier accrual date applies.

3. ***Steadfast Failed to Establish KB Home's Breach of Contract Cause of Action Accrued More Than Four Years Before the Complaint Was Filed***

The question next becomes: when did KB Home exceed any of its self-insured retention amounts? The answer is simple: The operative complaint does not tell us and, for purposes of demurrer, we do not know.

KB Home did not allege any particular dates in its complaint, although it alleged that expenses could still be incurred on covered homebuyer claims as many as eight years after the statute of repose had run on those claims. The exhibits attached to its complaint did not indicate when the self-insured retentions were allegedly exhausted, although, for the most part,

18

they established that none of the retentions were exhausted within the first year.[16]

Steadfast, in its demurrer, did not argue for any particular accrual date either, although it claimed that, since there was a 10-year statute of repose, there was a "hard stop" with the "Last Possible Warranty Repairs" being ten years after the last policy ended on February 1, 2006. But, based on the complaint and materials judicially noticed, there was no "hard stop" on February 1, 2016. That was simply the last day for a homeowner to request warranty repairs, not the last day for KB Home to make them. KB Home alleged that it was frequently subjected to lawsuits filed near the end of the 10-year period, which suits could generate expenses for years. But even if KB Home timely made the necessary repairs without a lawsuit, the time to make those repairs could run more than a year after Steadfast's purported "hard stop."[17]

---

[16] Each spreadsheet shows some portion of the self-insured retention remained unsatisfied after the first-year expenses, although four of the fifteen total projects show additional offsets which may or may not have been in the first year, resulting in a negative "remaining" self-insured retention balance.

[17] Under the Right to Repair Act, once the homeowner gives notice of a warranty claim, the builder must acknowledge receipt within 14 days. (Civ. Code, § 913.) The builder then has another 14 days in which to conduct an initial inspection of the claim. (Civ. Code, § 916, subd. (a).) If the builder deems a second inspection is necessary, it has another 40 days to conduct it. (Civ. Code, § 916, subd. (c).) Within 30 days of the final inspection, the builder may offer to repair the defect. (Civ. Code, § 917.) The homeowner shall have 30 days to authorize the builder to proceed. But the homeowner may also request the builder to

Steadfast's alternative argument that, because the self-insured retention is exhausted first, it must have been exhausted early in the warranty period is a reasonable argument, but not one sufficient to establish the complaint is time-barred as a matter of law. It certainly cannot be said, on this record, that, with respect to every project on which KB Home claims its self-insured retention was exhausted, it was necessarily exhausted in early years of the warranty. The very existence of a 10-year warranty presumes some defects will be discovered throughout that term; and sizeable per-project self-insured retentions suggest that they are not easily exhausted.

In its respondent's brief on appeal, Steadfast attempts to fill the void in its argument by returning to the language of KB Home's operative complaint. Specifically, KB Home alleged it performed "prompt warranty and customer service work on dozens of projects and hundreds of homes for up to ten years from

provide the information of alternative contractors to conduct the repairs. If so, the builder has another 35 days to present the information of the alternative contractors, and the homeowner has 20 days after that to authorize one to conduct the repairs. (Civ. Code, § 918.) The repair work shall be commenced within 14 days of selection. (Civ. Code, § 921, subd. (a).) "Every effort shall be made to complete the repair within 120 days." (Civ. Code, § 921, subd. (b).) "If the applicable statute of limitations has otherwise run during this process, the time period for filing a complaint . . . for a claim of inadequate repair, is extended from the time of the original claim by the claimant to 100 days after the repair is completed . . . ." (Civ. Code, § 927.) If each of these deadlines is run to its fullest extent, a warranty claim submitted on the last date of the warranty could result in repairs completed over 300 days later, and an additional 100-day extension to file suit if the repairs are inadequate.

the close of escrow on each home at a cost of multiple tens of millions of dollars." Recognizing that the self-insured retentions on the 15 projects at issue were $1 million or less, Steadfast emphasizes the "multiple tens of millions" language, and reasons, "KB Home incurred expenses well above its self-insured retentions within the 10-year limited warranty periods covered by the" policies. The conclusion does not follow. There is no evidence that the "multiple tens of millions of dollars" refers only to the 15 projects at issue in its complaint. Indeed, the language of the allegation, speaks of "dozens of projects," thereby implying tens of millions were spent on at least 24 projects.

The trial court's analysis fares no better. While the court characterized the policies as occurrence policies rather than claims-made policies, the "occurrences" covered consisted of the construction work within the policy period. Instead, as Steadfast agrees, it offered insurance for the scope of the warranty, which covered claims made up to 10 years after the close of escrow within the policy period. As we have discussed, it is simply not clear from the complaint (or any of Steadfast's arguments) that the self-insured retentions for the 15 projects at issue were necessarily exhausted during that 10-year period. KB Home alleged expenses – particularly litigation expenses – that continued to accrue long after the 10-year period had run. We cannot determine whether any of the self-insured retentions were also exhausted during this post-10-year period. It follows that Steadfast's statute of limitations defense cannot be adjudicated on demurrer.

## 4. *The Bad Faith Cause of Action is Not Barred*

KB Home's bad faith claim is based on Steadfast's failure to properly respond to its request for reimbursement. With the

survival of the breach of contract causes of action, it is apparent that if the bad faith claim is viewed as a breach of contract and is subject to the four-year statute, it survives as well. If it is a tort claim, subject to the two-year statute, (Code Civ. Proc., § 339, subd. 1), Steadfast must still establish the date of its accrual. KB Home requested reimbursement by letter of July 3, 2018, but it is not clear when Steadfast denied the request. According to KB Home, Steadfast said it would not respond until KB Home had audited its other Nevada projects and sought reimbursement for all of them together. Steadfast performed the audit and sent the expanded request for reimbursement on June 3, 2019. Thereafter, according to KB Home, Steadfast promised it would respond, but never did. KB Home ultimately filed suit on February 25, 2021. Based on these allegations, at the very least the complaint was timely with respect to the June 3, 2019 request for reimbursement.

**5.    *Conclusion***

It may be that both parties possess the data necessary to establish the accrual date of KB Home's causes of action. KB Home has audited its payment files and created individual project spreadsheets of all expenses it seeks to allocate to its self-insured retention; it appears not yet to have provided a spreadsheet that indicates when the expenses exhausting the retentions were allegedly incurred. Steadfast, for its part, knows when it believed each self-insured retention was triggered and it began adjusting claims on each project directly. It is also aware – at least in general – of which expenses KB Home argues were wrongfully omitted from those retentions, and may be able to determine the arguable accrual date from this information. But that data was not before the trial court, and, on demurrer, we

22

give the plaintiff the benefit of the doubt that the action is timely. It is therefore unnecessary to address KB Home's arguments of delayed discovery and equitable tolling.

## *DISPOSITION*

The judgment is reversed, and the matter remanded to the trial court with directions to vacate its order sustaining Steadfast's demurrer and enter a new and different order overruling it.  Steadfast is to pay KB Home's costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.